GOODYEAR SERVICE STORE, APPELLANT, v. SPECK, APPELLEE.

(No. 7926—Decided January 21, 1976.)

*Messrs. Parker & Parker* and *Mr. Stephen P. Leiby,* for appellant.
*Mr. David B. Wilt,* for appellee.

BRENNEMAN, J. This is an appeal from a judgment of the Akron Municipal Court ordering (1) the suspension of an order in aid of execution of a prior judgment taken against defendant Lettie Ann Speck, the appellee, and (2) the Municipal Court Clerk, to return sums already attached. The suspended order provided for the garnishment of an account held by defendant with the First National Bank of Akron. Defendant maintained a checking account and monies, in the amount of $150.12, were found therein, seized and paid over to the Clerk of the Akron Municipal Court.

The court found that the funds attached consisted solely of aid to families with dependent children payments deposited by defendant into her checking account. The court concluded that the attachment was improper. We affirm that judgment.

Plaintiff's single assignment of error states:

"The trial court erred as a matter of law in finding that a checking account consisting of the proceeds of aid to dependent children is exempt from proceedings in aid of execution."

Determination of this case depends on the interpretation placed on R. C. 5107.12, which reads:

"Aid exempt from execution

"Aid under sections 5107.01 to 5107.16, inclusive, of the Revised Code, shall be inalienable whether by way of assignment, charge, or otherwise, and exempt from execution, attachment, garnishments, and other like process."

The three key words in the statute are "aid," "inalienable," and "exempt." Plaintiff urges that monies actually in the hands of the aid recipient are not exempt because otherwise the monies become inalienable and unusable for their intended purpose. The fallacy of this interpretation is apparent when the statute is read in the context of the general statutory scheme of the welfare program and other exemption statutes passed by the Ohio legislature.

The purpose of the aid to dependent children program is to provide a transfer payment to families with needy dependent children as defined in R. C. 5107.03. The federal program (Title 42, Section 601, U. S. Code) which the Ohio statutes implement is specifically designed: "* * * [t]o help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *."

Under R. C. 5107.05, the transfer payment made for these purposes "* * * shall be delivered to the caretaker of the child or his duly appointed guardian * * *" to qualify the expenditures for matching funds under the federal aid to dependent children program. Thus, the legislature has tied the payments made under R. C. 5107 et seq. closely to their intended purpose.

The recipient of this aid is the parent or guardian of the child for whose benefit the aid is given. The federal statute provides for supervision of the recipients of aid and for the failure of these recipients to expend the aid for its alloted purpose. Title 42, Section 605, U. S. Code. To insure that the aid is expended for its proper purpose, Ohio has enacted the statute in question here, R. C. 5107.12. If we accept the interpretation urged by the plaintiff, we

would sanction the payment of aid monies intended for "needy dependent" children to creditors of the parents of these children. This is an absurd result. The aid to dependent children program is not a creditor's aid plan. R. C. 5107.12. must be interpreted to conform with the clear legislative intent of the aid to dependent children statute to aid dependent children.

Black's Law Dictionary (4th ed. rev. 1968) defines the word "inalienable" as:

"Not subject to alienation; the characteristic of those things which cannot be bought or sold or transferred from one person to another * * *."

As used in R. C. 5107.12 and interpreted in accordance with the obvious legislative intent of the aid to dependent children statutes, the word must mean that such aid cannot be transferred from the one for whom it is intended. As currently administered, the transfer payments provided by the aid program are monetary in nature. They could consist of all manner of goods or services. In any case, as long as they are used for their intended purpose they are not alienated in the dictionary definition of the word. Were someone to take these monies and use them for a purpose not contemplated by the statutes, the prohibition on alienation (R. C. 5107.12) would be breached, but simple changes in the nature of the transfer payments are not alienation. The "aid" is subject to the statutory prohibition—not the form of the "aid."

The word "exempt" must be interpreted in the same manner. As long as the aid is applied in a manner conforming with the legislative intent of the aid to dependent children program, transfer payments of whatever nature are exempt under R. C. 5107.12.

At this point it is helpful to review analogous statutory exemptions granted by the state of Ohio. The Public Employees Retirement System Act, R. C. 145.56: the State Teachers Retirement System Act, R. C. 3307.71; unemployment compensation benefits, R. C. 4141.-32; poor relief, R. C. 5113.01; and workmen's compensation awards, R. C. 4123.67, all contain provisions for exemption of the transfer payment involved. All of these exemptions have essentially similar wording except those in

workmen's compensation awards. R. C. 4123.67 provides specifically: "Compensation *before payment* shall be exempt from all claims of creditors and from any attachment or execution * * *" (emphasis ours) mandating that the monies "shall be paid only to the employees or their dependents." It is in this statute alone that the legislature has limited the exemption from attachment to "before payment." All the above statutes use more general language. The legislature could have worded R. C. 5107.12 as it did R. C. 4123.67. It did not and we must interpret R. C. 5107.12 more liberally.

We note the principle set out in *Dennis* v. *Smith* (1932), 125 Ohio St. 120, 124, in interpreting exemption statutes such as R. C. 5107.12. The court said:

"* * * [T]he rule is well-nigh universal that a liberal rule of interpretation should be applied. By 'liberal construction' is not meant that words and phrases shall be given an unnatural meaning, or that the meaning shall be enlarged or expanded to meet a particular state of facts. A liberal construction must still be a fair and reasonable one, in an effort always to ascertain the legislative intent. Among other things, it must be inquired as to the object for which the law is framed; and that construction must be adopted which will promote its purpose. In applying the rule of liberal construction, all reasonable doubts are to be resolved in favor of the statute being applicable to the particular case. Exemption statutes are in derogation of the common rights of creditors, and if no other elements are present such statutes should receive a strict construction. On the other hand, by reason of their being enacted for the public good, to effectuate beneficient purposes, the rule of liberal construction is almost universally held to apply. Numerous decisions of other states, holding the liberal rule applicable, could be cited, but it is not necessary to go beyond our own decisions. In *State, ex rel. Coles*, v. *Shook*, 97 Ohio St. 164, 118 N. E. 1010, it is said: 'Laws exempting property of a debtor from execution are to be construed liberally in his favor. A statutory provision in the nature of an exception to the general law on the subject of exemptions should be given a strict construction.' "

To effectuate the purposes of the legislature in pass-

ing the aid to dependent children program, we must inter-
pret R. C. 5107.12 in this liberal manner.

We come finally to the case of *First National Master
Charge* v. *Gilardi* (1975), 44 Ohio App. 2d 383, decided
by the Court of Appeals for Hamilton County. That case
is decided on a theory entirely consistent with our own. The
test applied is whether the mere deposit of "aid" in a
checking account so changes its character as to terminate
the exemption of R. C. 5107.12. We hold that as long as
those monies are found to still be "aid," they are exempt
from execution. This is the only holding consistent with
the legislative intent of the statutes involved. In this cause,
there is no evidence that the money in the account was
commingled with money not "aid," or that the debtor
furnished services for the benefit of the children.

For a further discussion of the public policy involved
in welfare or transfer payment statutes, see, *Philpott* v.
*Essex County Welfare Board* (1973), 409 U. S. 413; *Por-
ter* v. *Aetna Casualty & Surety Co.* (1962), 370 U. S. 159;
and *Lawrence* v. *Shaw* (1937), 300 U. S. 245. While the
decisions in each of those cases depends on a different
statutory wording than exists here, all are authority for
the legislative intent involved in transfer payment stat-
utes.

*Judgment affirmed.*

VICTOR, P. J., concurs.
MAHONEY, J., dissents.

MAHONEY, J., dissenting. The issue raised appears to
be of first impression in this state. Therefore, it is neces-
sary to consider the broader subject of exemptions in gen-
eral and the construction that has been given to them.

Although in derogation of the common law, statutes
granting exemptions because of the humane purposes they
seek to further have been construed liberally in favor of
the debtor. See, *e. g., Dennis* v. *Smith* (1932), 125 Ohio St.
120. This principle, however, has no application where
there is no ambiguity in the statute and where the con-
struction urged does violence to the plain meaning of the
statute's language. *Morris Plan Bank* v. *Viona* (1930), 122
Ohio St. 28. The import of statutory language may

not be enlarged, nor its meaning strained, so as to bring within its purview a case clearly beyond its scope. *Gibson* v. *Mundell* (1876), 29 Ohio St. 523.

The statute in controversy here, R. C. 5107.12, reads:

"Aid under sections 5107.01 to 5107.16 [relating to aid to families with dependent children], inclusive, shall be *inalienable* whether by way of assignment, charge, or otherwise, and *exempt* from execution, attachment, garnishment, and other like process." (Emphasis supplied.)

The majority predicates its opinion upon the case of *First National Master Charge* v. *Gilardi* (1975), 44 Ohio App. 2d 383, wherein the Court of Appeals for Hamilton County construed R. C. 5113.01, which is nearly identically worded with R. C. 5107.12. I disagree with the rationale applied by my colleagues. The decision in *Gilardi, supra,* conflicts with that court's rationale in *In re Ell* (1943), 71 Ohio App. 535, wherein that court did not exempt proceeds of a police pension deposited in a bank account. At that time, G. C. 4628-2 provided:

"No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy or seizure by or under any legal or equitable process whatever, whether the same remains with the treasurer of the pension fund * * * or is in the course of transmission to the pensioner, *but shall inure wholly to the benefit of such pensioner.*" (Emphasis supplied.)

Three federal cases were cited as authority in *Gilardi.* While these cases are of little precedential value, they are indicative of a judicial expression of social policy.

*Philpott* v. *Essex County Welfare Board* (1973), 409 U. S. 413, held that social security benefits are exempt from attachment after they are deposited in a bank account by the recipient. Title 42, Section 407, U. S. Code, states: "none of the moneys *paid or payable* * * * shall be subject to * * * attachment, garnishment, or other legal process * * *." (Emphasis added.)

*Porter* v. *Aetna Casualty & Surety Co.* (1962), 370 U. S. 159, held veterans' benefits, pursuant to Title 38, Section 3101, U. S. Code, to be exempt from the claims of creditors even though deposited in a savings and loan association account. That statute provides that payments shall be ex-

empt "either *before or after* receipt by the beneficiary
\* \* \*." (Emphasis added.)

*Lawrence* v. *Shaw* (1937), 300 U. S. 245, held World
War I veterans' compensation immune from state taxa-
tion under Title 38, Section 454, U. S. Code, which pro-
vided that such compensation "shall not be assignable \* \* \*
shall be exempt from the claims of creditors, and shall not
be liable to attachment, levy, or seizure \* \* \* either *before
or after receipt* by the beneficiary." (Emphasis added.)
While in each of these three cases the court alludes to
the social policy underlying the grant of aid and the im-
munity of that aid from the claims of creditors, it is ap-
parent that the ratio decidendi in each was the clear
import of the statutory language that they be exempt
*after as well as before* receipt.

An examination of some of the decisions rendered by
the courts of other states indicates that judicial interpre-
tation of exemptions has not expanded the exemption be-
yond the plain meaning of the statute. *Miller* v. *Monrean*
(Alaska 1973), 507 P. 2d 771; *Colton* v. *Martell* (1974), 79
Misc. 2d 190, 359 N. Y. S. 2d 632; *Kaufman* v. *Hicks* (1974),
17 Ill. App. 3d 274, 307 N. E. 2d 615; *Kruger* v. *Wells Far-
go Bank* (1974), 11 C. 3d 352, 521 P. 2d 441; *G. M. A. C.* v.
*Falcone* (1974), 130 N. J. Super. 517, 327 A. 2d 699 a New
Jersey case conflicting with *Beierlien* v. *Faulkner* (1937),
190 A. 853. These cases are consistent with the case law
rules of construction in Ohio.

R. C. 5107.12 speaks of two concepts: aid which is in-
alienable and aid which is exempt. The former refers to
voluntary action by the intended recipient and the latter
refers to involuntary action against the intended recipient.
Nowhere does the statute mention what occurs after the
aid is paid to the recipient. Only while it is aid does it
retain its inalienability and exemption. All of the ex-
amples mentioned in the statute such as "assignment,
charge, \* \* \* attachment, garnishment \* \* \*" are all pro-
cesses and actions to prevent the aid ever reaching the
recipient. The legislature was trying to close all the doors
to payment to the recipient. If it also intended to protect
the monies after the payment to the recipient, the legisla-
ture should have so provided or at least provided a par-

tial exemption under R. C. 2329.62 through R. C. 2329.66. Once it is paid to the recipient, can anyone say it is no longer alienable? Otherwise, how could it ever be applied for the benefit of the dependent children? If it loses its inalienability after payment, it must also lose its exempt quality. The law does not specify any method of disbursement or accounting but simply requires the recipient to expend the funds for the benefit of the dependent children. The benefit can take various forms.

· I see no reason to decide this case in a manner inconsistent with the rules of construction long followed in this state concerning exemptions. The majority's holding enlarges the scope of the exemption accorded by this statute beyond the plain import of the statutory grant. I am unwilling to engage in impermissible judicial legislation.

While allowing the attachment of these funds after receipt by the beneficiary may be viewed as thwarting the legislative intent behind the grant, Title 42, Section 602, U. S. Code, contains no language prohibiting the garnishment after payment. Moreover this statute clearly establishes procedures to be followed when it appears that aid is not inuring to the benefit of the child, including counseling of the mother or even making a child a ward of the state in extreme cases. The procedures thus established would better insure that the aid benefits the child than would the court's decision today. This is especially true where the debtor may well be one who previously furnished food, goods, or services on credit to the mother for the benefit of the children.

In short, my colleagues say the money in the checking account is exempt from attachment because it can be traced and is readily discernible and available for disbursement by the mother. Would they still follow the aid if it were put in jewelry? a used auto? a savings bond? a savings account? furniture? cash? or a payment on a house? I doubt it. If it is exempt, it is exempt for all purposes not just because it loses its identity and is commingled. Speaking of commingling and loss of identity, is a checking account anything other than a debtor-creditor relationship after a deposit is made?