GENERAL MOTORS ACCEPTANCE CORPORATION, APPELLEE, *v.* DESKINS; THOMAS, APPELLANT.

(No. 47225—Decided April 2, 1984.)

*Mr. Victor M. Javitch,* for appellee.

*Ms. Paula Gellman* and *Ms. Carolyn Carter,* for appellant.

NAHRA, J. Appellant, Rebbie Thomas, signed as a co-purchaser for a car bought by her daughter, Helen Deskins. When Deskins was no longer able to make the monthly payments, appellant attempted to make them for her. Appellant eventually called GMAC to repossess the car. The car was repossessed and sold.

On June 13, 1978 GMAC sued Deskins and Thomas for the $2,025.97 balance remaining after the sale of the car. Appellant states in her affidavit that after receiving the complaint she phoned GMAC's attorney and explained that she had requested the car be repossessed since, due to her illness and loss of employment, she could no longer afford to make Deskins' payments. The plaintiff's attorney told her to "forget it," which appellant understood to mean it was not necessary to do anything further regarding the matter, and appellant took no steps to defend in the action.

A default judgment was obtained against appellant on August 8, 1978. On August 9, 1978, two bank accounts of appellant's at Central National Bank were attached. One account was No. 38-021160-7, in the name of "James Belle or Rebbie Thomas," containing $100.31, of which the bank paid $99 to the court. The other account was No. 53-004792-7, in the name of Rebbie Thomas, containing $815.86, of which the bank paid $814 into court. The court mailed a check for the $913 total to plaintiff.

According to Thomas' uncontroverted affidavit, she first learned of the attachments on October 4, 1978 on a visit to the bank. Prior to October 4, 1978 she had received no notice from plaintiff, the bank or the court regarding the attachment. She indicated that her address was not the same as listed on the court records. After learning of the attachments, she immediately obtained legal counsel.

On November 1, 1978 appellant filed a motion for relief from the order of attachment. On November 8, 1978 appellant filed a motion for relief from judgment. On June 17, 1983 both of appellant's motions were overruled without hearing.[1] Appellant appeals from the overruling of her motions.

"The trial court erred in failing to grant defendant-appellant Rebbie Thomas' motion for relief from judgment."

Civ. R. 60 governs relief from judgments or orders. Section (B) states:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * *. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."

Before granting a Civ. R. 60(B) motion, the courts have required a demon-

_____

[1] We have found nothing in the record which explains why it took approximately four and a half years to rule on these motions.

stration of a meritorious defense if relief is granted, timely action, and a ground for relief under Civ. R. 60(B). *Colley* v. *Bazell* (1980), 64 Ohio St. 2d 243 [18 O.O.3d 442]; *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146 [1 O.O.3d 86], paragraph two of the syllabus.

Appellant states in her affidavit that she called GMAC's attorney after receiving the complaint to explain her change in circumstances and why she requested that the car be repossessed. Appellant states that the attorney told her to "forget it," which she understood to mean she did not have to do anything further regarding the complaint. She contends that under these circumstances her failure to respond to the complaint constitutes excusable neglect, a ground for relief under Civ. R. 60(B)(1). Based on the assertions in appellant's unrefuted affidavit, we find her failure to contest the complaint was due to excusable neglect.

The motion for relief was also timely filed, being filed three months after judgment was entered and one month after appellant actually learned of the judgment.

We further find that appellant demonstrated a meritorious defense, asserting that defenses under the Truth-in-Lending Act existed. "The movant's burden is to allege a meritorious defense, not to prevail with respect to the truth of the meritorious defense." *Colley* v. *Bazell, supra,* at 247, fn. 3. Here, appellant has alleged a meritorious defense.

While relief should not always be granted at the request of the movant, we are mindful that where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits. *GTE Automatic Electric* v. *ARC Industries, supra,* paragraph three of the syllabus. With this principle in mind, and based on the facts before the court regarding the motion for relief, we find that the trial court abused its discretion in failing to grant relief from judgment.

"The trial court erred in failing to grant defendant-appellant Rebbie Thomas' motion for relief from order of attachment."

Appellant moved for relief from the order of attachment, contending that funds belonging solely to her grandson were attached, social security funds which are exempt by law from attachment were attached, and no notice and opportunity to be heard were given prior to the attachment.

In *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97, 105 [68 O.O.2d 251], this court stated the following:

"If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion. This is proper and is not an abuse of discretion. If under the foregoing circumstances, the trial court does not grant a hearing and overrules the motion without first affording an opportunity to the movant to present evidence in support of the motion its failure to grant a hearing is an abuse of discretion. *Matson* v. *Marks* [(1972), 32 Ohio App. 2d 319], *supra,* at 327 [61 O.O.2d 476]."

Because appellant's affidavit accompanying her motion for relief from attachment contains operative facts which would entitle her to relief, the trial court abused its discretion by overruling the motion without first affording appellant an opportunity to present evidence in support of her motion.

While appellant and her grandson, James Belle, held in both their names joint account No. 38-021160-7 which was attached, appellant asserts that the funds in that account belonged solely to

her grandson who was not a debtor, and thus should not have been attached. In *Union Properties* v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430 [40 O.O. 425], which dealt with a husband and wife's joint account and the rights of a creditor of the husband's to those funds, the court in its syllabus stated:

"1. * * * [T]he form of the deposit is not conclusive on the subject of joint ownership and evidence may be introduced that the deposit was in truth made and maintained on a different basis.

"2. The money in such account is not subject to appropriation by the husband's judgment creditor, where it is found upon evidence of sufficient probative force that notwithstanding the form of the deposit the money is in reality the sole property of the wife."

The reasoning of *Union Properties* applies with equal force to the facts of this case, and appellant should have been given the opportunity to show that the money in the account was the sole property of her grandson.

Appellant also asserted that account No. 53-004792-7, which was attached, contained social security benefits, which are exempt from attachment under Section 407, Title 42, U.S. Code, which provides:

"The right of any person to any future payments under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

In *Philpott* v. *Essex County Welfare Board* (1973), 409 U.S. 413, the United States Supreme Court held that social security funds deposited in a savings account still maintain their exempt status. The funds on deposit there were readily withdrawable and retained the quality of "moneys" within the purview of Section 407. Section 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Id.* at 417.

In *First Natl. Master Charge* v. *Gilardi* (1975), 44 Ohio App. 2d 383 [73 O.O.2d 460], the court dealt with poor relief funds deposited in a checking account, and held that such funds retain their statutory exemption from attachment. The court also addressed the issue of how to handle commingling of exempt and non-exempt funds.

"It is obvious that our holding requires — as it may in most cases of this sort — the tracing of monies on deposit to determine the amount attributable to current poor relief and welfare funds * * * which are exempt from the order of garnishment." *Id.* at 385-386.

We see no reason why the "tracing" of funds as used here to determine what amount in an account is attributable to exempt funds should not apply with equal force to exempt social security funds in an account. *Bethesda Hospital* v. *Wolf* (App. 1979), 11 O.O. 3d 168, followed the holding of *First Natl. Master Charge* v. *Gilardi, supra,* and found that if sums were exempt at their source they remain exempt even though commingled with non-exempt funds, as long as the exempt source of the funds was reasonably traceable.

Even if some of the funds in appellant's account were non-exempt, the portion attributable to social security would remain exempt. Appellant should have had an opportunity to show that certain funds in the account sought to be attached were social security benefits and thus exempt. It was an abuse of discretion not to conduct a hearing on this issue.

Appellant's third contention was that her due process rights were violated since she did not receive notice or an opportunity to be heard before the funds were attached. It was on this basis

that Ohio's post-judgment garnishment law in effect at the time appellant's bank accounts were attached, R.C. 2715.11 *et seq.*, was recently declared unconstitutional on its face in *Simler* v. *Jennings* (S.D. Ohio 1982), 23 O.O. 3d 554. *Finberg* v. *Sullivan* (C.A.3, 1980), 634 F.2d 50, also found Pennsylvania's post-judgment garnishment procedures, which resemble Ohio's procedures, unconstitutional as a violation of due process.

For the reasons discussed above, the decision of the lower court is reversed and the cause remanded to the trial court for trial on the underlying cause of action, and, if necessary, then to hold a hearing with respect to the order of attachment.

*Judgment reversed and*
*cause remanded.*

CORRIGAN, J., concurs.

DAY, C.J., concurs in judgment only.