**In re Dale Alan WIGGINS, Debtor.**

**Bankruptcy No. 85–00903.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 13, 1986.

Robert T. Kelsey, Sandusky, Ohio, for debtor.

Philip R. Joelson, Toledo, Ohio, for Trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Trustee's Objection to the Debtor's Claim of Exemption. The parties have agreed that the issues addressed by this Objection are issues of law which may be decided by the Court based upon the written arguments of counsel. The parties have submitted such arguments and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Objection should be OVERRULED IN PART and SUSTAINED IN PART.

## FACTS

The facts in this case do not appear to be in dispute. The Debtor filed his voluntary Chapter 7 Petition with this Court on June 18, 1985. In his schedules the Debtor disclosed his interest in a pension and profit sharing plan that is being held on his behalf by his employer. Both parties have admitted that this plan qualifies for the tax benefits available under the Employee Retirement Income Security Act (ERISA). They have also agreed that the plan contains a spendthrift provision, whereby the debtor is precluded from transferring or otherwise alienating the benefits of the plan.

Under the terms of the plan the employer may, but is not required to, make a contribution to the plan each "plan year". The amount of the annual contribution is determined by the employer's Board of Directors and is based upon the business's net profits for any given year. The annual

contributions are divided pro-rata among those employees who are employed at the end of each plan year. These funds are credited to an account which is held for each employee and is known as his Company Contribution Regular Account. An employee is not entitled to withdraw funds from this Regular Account. Regular Account funds are only payable to the employee at the time of his retirement or at a time when the employee becomes permanently disabled. If an employee should die during the course of his participation in the plan, the funds are paid to the surviving spouse. If no spouse existed the funds would be paid to the employee's beneficiary, as defined by the plan. If an employee's employment is terminated prior to receiving payments from the Regular Account, and the employee is not subsequently rehired, the funds in the employee's Regular Account are forfeited to the extent they have not vested in the employee. A terminated employee does, however, retain certain rights to some of the funds in his Regular Account. Depending upon the length of the employees' service, a certain percentage of the Regular Account becomes vested in the employee. Any amounts which have vested would be payable to the employee upon termination.

In the schedules filed with his Petition, the Debtor scheduled the Plan as an exemption in the amount of Ten Thousand and no/100 Dollars ($10,000.00). However, the Plan is not scheduled as an asset of the estate. The Trustee objected to the Debtor's claim of exemption, contending that the spendthrift provision of the plan does not bring the plan within the protection afforded by the Bankruptcy Code to traditional spendthrift trusts. Accordingly, he argues that the plan should be considered a part of the estate, and that he should have immediate access to the funds held in the Debtor's account. He also argues that if the plan is exemptable, it is only exemptable to the extent reasonably necessary for the support of the Debtor and his dependents. The Debtor summarily opposes these arguments by asserting that the plan falls within the spendthrift trust provision of the

Bankruptcy Code, and that even if it becomes part of the estate it is exemptable in its entirety.

## LAW

■ The provisions of 11 U.S.C. Section 541(c) state in pertinent part:

"(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor ...

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

Under these provisions, a debtor's interest in a spendthrift trust does not become property of the debtor's bankruptcy estate. *See, Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985). This exclusion is an exception to the provision which otherwise includes all of the debtor's legal and equitable interests in the estate. *See,* 11 U.S.C. Section 541(a).

## I

There has been a great deal of litigation on the issue of whether or not a debtor's interest in an ERISA plan becomes property of the estate under Section 541(c)(2). A review of existing case authority finds that there is no concensus as to the resolution of this question. *See for example, Lichstrahl v. Bankers Trust, supra, Miller v. Lincoln Nat. Bank & Trust Co. (Matter of Cook)*, 43 B.R. 996 (N.D.Ind.1984), *Matter of Kelley,* 31 B.R. 786 (Bkcy.N.D.Ohio 1983), *but see, Clotfelter v. Ciba-Geigy Corp. (In re Threewitt)*, 24 B.R. 927 (D.Kan.1982), *Warren v. G.M. Scott & Sons (Matter of Phillips)*, 34 B.R. 543 (Bkcy.S.D.Ohio 1983). In reaching these decisions, the Courts have focused on the

issue of whether or not an ERISA plan is the type of spendthrift trust contemplated by the provisions of 11 U.S.C. Section 541(c)(2) to be excluded from the estate.

Throughout this ongoing dispute, the fundamental question addressed by the Courts is whether ERISA plans are the types of trusts which are contemplated by Section 541(c)(2) to be excluded from the estate. While this is, in fact, the ultimate question which must be resolved, it has been contended that such plans are *ab initio* outside the scope of Section 541(c)(2). The foundation for this argument is not altogether clear. However, it appears to have its basis in the fact that ERISA plans are usually established by a debtor's employer and are titled as "pension" or "profit sharing" plans. It also appears to be based on the argument that ERISA plans are not substantially similar to the traditional types of spendthrift trusts which are protected by Section 541(c)(2).

Although the term "spendthrift trust" is often used when referring to trusts called into question on the basis of Section 541(c)(2), the term itself is not used in that section of the Bankruptcy Code. The relationship between the term and this section results from the fact that most funds which are excluded from a bankruptcy estate on the basis of Section 541(c)(2) are classical forms of spendthrift trusts. However, a review of the language in this section finds that it allows any "beneficial interest of the debtor in a trust" to be excluded if a restriction on a transfer of that interest can be enforced under state law. There is nothing in that section which requires use of the magic word "spendthrift trust". All that is required is that there be a restriction on the transfer of a debtor's beneficial interest in a trust, and that the restriction be enforceable under nonbankruptcy law.

■ Furthermore, a review of the law on spendthrift trusts finds that such trusts are commonly created for the purpose of providing for the maintenance of the beneficiary while at the same time securing the beneficiary against improvidence or inca-

pacity. *See generally,* 49 Ohio Jur.2d *Spendthrifts* Section 5. The protection is afforded by a provision in the trust which precludes the voluntary or involuntary alienation of the trust by the beneficiary. A comparison between the characteristics of a spendthrift trust and the terms of ERISA plans finds that there is little, if any, difference in their basic purpose and operation. As will be more fully explained, the terms of any trust must be examined on a case-by-case basis. However, as an initial proposition, where the terms of an ERISA plan provide for a distribution to an employee only after a triggering event, as defined by the plan, has occurred, and that the triggering event entails circumstances where the distribution will be used as support for the employee and his dependents, there is, in fact, no substantial difference between the two types of trusts. Any distinction would be artificial and would not be consistent with the equitable nature of the Bankruptcy Code. Accordingly, it must be concluded that ERISA plans are the types of trusts which may be considered for exclusion from the estate pursuant to the provisions of Section 541(c)(2).

II

■ Having determined that ERISA plans may be considered for exclusion on the basis of Section 541(c)(2), the Court must move to the determination of whether or not the plan in the present case qualifies for the protection available under that section. As previously indicated, in order to be entitled to such protection, it must be determined that the debtor's interest in the plan is subject to a restriction on alienation of his interest which is enforceable under nonbankruptcy law. Therefore, the determination involves the application of a two part test. Initially, it must be shown that the Debtor's interest is subject to an antialienation clause. Secondly, the antialienation clause must be enforceable under state law.

In the present case, the Court recognizes that the provisions of ERISA require plans to contain an antialientation clause. The

parties have agreed that the plan in question qualifies for ERISA benefits and that it contains a restriction on the transfer of the Debtor's interest. Accordingly, it must be concluded that the Debtor's interest in the plan is subject to an antialienation provision. As a result, the Debtor's interest has satisfied the first part of the test.

## III

The second test which must be met to exclude trust funds from the estate is that the restriction on transfer must be enforceable under applicable state law. In Ohio, it is unclear whether a spendthrift or nonalienable trust is enforceable against a debtor's creditors. *See, Martin v. Martin*, 54 Ohio St.2d 101 (1978), *but see, Sherrow v. Brookover*, 174 Ohio St. 310 (1963). *See also*, 49 Ohio Jur.2d *Spendthrifts* Section 8. While it has been stated that spendthrift trusts will be enforced to the extent they are not unlawful or against public policy, *see, McWilliams v. McWilliams*, 2 Ohio Op.2d 77 (1956), there has been no delineation as to the specific circumstances under which such trusts will be considered valid. In view of the language in *McWilliams v. McWilliams*, supra, which expresses favor for the recognition of spendthrift trusts, the fact that the purpose of the ERISA plan appears to be consistent with public policy, and the fact that the Trustee has not presented sufficient reason to conclude that spendthrift trusts are not enforceable in Ohio, this Court will regard the antialienation clause of this plan enforceable under nonbankruptcy law.

## IV

Since this Court has regarded the antialienation clause enforceable under state law, then it would appear that the second test for exclusion is satisfied, and that the Debtor's interest in the plan is not made part of the estate. In the absence of other considerations, this conclusion would appear to allow any ERISA plan to automatically qualify for immunity under Section 541(c)(2). However, in some jurisdictions, it has been held that a debtor's right to control the disposition of or to exercise dominion over funds in an ERISA account disqualifies that account as an enforceable spendthrift trust for purposes of bankruptcy. Without the protection afforded such trusts under Section 541(c)(2), the funds in the account become part of the estate. *Lichstrahl v. Bankers Trust*, supra, *Miller v. Lincoln Nat. Bank & Trust Co.*, supra. These decisions are, in their result, consistent with the well established principle that the bankruptcy estate inures to whatever rights the debtor had at the time the petition was filed. But, in reaching these decisions, it was not necessary to disqualify the trust as a spendthrift trust on the basis that the debtor had a right to access. Rather, the only principle which had to be applied was that which includes in the estate all rights which the debtor had at the time the Petition was filed. Such rights would include any rights to modify the terms of the trust or to receive a distribution from the trust. Since the estate would acquire the Debtor's rights, it would appear that the character of the trust is immaterial to determining whether or not the trust is included in the estate. In circumstances where the debtor had the authority to exercise dominion over the trust, the trustee in bankruptcy would assume that authority and be able to acquire access to the funds for the benefit of creditors. If the debtor had no authority over the trust, then the estate would not acquire any rights and the trustee in bankruptcy would be unable to exercise any authority. Accordingly, it would follow that the terms of an ERISA plan will be determinative of the rights which a bankruptcy trustee may exercise over such a trust.

Although the debtor's right to control was the dispositive, albeit unused, factor in the previous cases, what should be noted is that the Courts appear to have drawn a distinction between what appears to be an excludeable trust under Section 541(c) and the type of trust which is actually contemplated by Section 541(c)(2) as excludable. In doing so, it appears that the Courts have established a third test for the determination of whether or not a trust may be

excluded from the estate. That test involves an examination of whether the operation of the trust in question is consistent with purpose for which the exclusion of such beneficial interests under Section 541(c)(2) is allowed. If the operation of an ERISA plan is consistent with the legislative intent behind allowing the plan's exclusion, then such exclusion should be allowed. However, in order to make that determination, the Court must first discern the intent which underlies the authority to exclude a debtor's interest in an trust.

A review of the legislative history finds that the exclusion of a beneficial interest in a trust was intended to allow debtors the ability to retain the right to receive a distribution if the benefit provides a means of support for the debtor and his dependents. *See,* Bankruptcy Act of 1973 Section 4–60(b), Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess. Pt. II 151 (1973). Although the original language of the proposed statute only provided for the exclusion of the benefit to the extent reasonably necessary for the debtor's support, the reasonably necessary limitation was not enacted. Instead, the limitation was made part of the exemption limitations. *See,* 11 U.S.C. Section 522(d)(10). As will be explained later in this Opinion, the exemption limitation is not applicable to the question of whether or not the debtor's interest becomes part of the estate. The issue presently under consideration only involves a determination as to the purpose for which Section 541(c)(2) was enacted. As previously indicated, the right to receive a trust distribution was regarded as means by which a debtor could, in the absence of other readily available means, support both himself and his dependents. It was also indicated that a debtor's bankruptcy should not be allowed to defeat the legitimate expectations of a settlor. *See,* Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200, H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 176 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963. This would be consistent with the purpose for which such trusts are

commonly established, including the provision of a means of supporting the beneficiary. It would also be consistent with the well recognized goal of the Bankruptcy Code that a debtor be given a meaningful opportunity for a fresh start. Therefore, it must be concluded that the purpose for which the authority to exclude a beneficial interest from an estate was to allow a debtor a means of supporting himself and his dependents in times when he is otherwise unable to do so.

■ Having determined the purpose for which the exclusion of trusts under Section 541(c)(2) is allowed, and that a debtor's interest in an ERISA plan is otherwise excludeable under this section, the Court must apply the third test and determine whether or not the plan in question actually operates in a manner which is consistent with the intent of Section 541(c)(2). A review of the plan finds that the Debtor is only entitled to a distribution from the funds in his Regular Account upon his death, disability or retirement. The contingency of these events is sufficiently uncertain so as to conclude that the Debtor has no meaningful control or dominion over these funds. In addition, any distribution of these funds requires the determination of a third party that one of the events has occurred. This mandatory third party intervention further removes the Debtor from any control over the account. Without immediate control over these funds, there is right of control which can pass to the benefit of the estate. Furthermore, the death, disability, or retirement of the Debtor is likely to leave both himself and any dependents without an ongoing means of support. Inasmuch as the availability of such support was the intended purpose behind the enactment of Section 541(c)(2), it must be concluded that the operation of the plan is consistent with Section 541(c)(2) for purposes of exclusion from the estate. Inasmuch as the plan is compatible with that provision, it must also be concluded that the third test under Section 541(c)(2) has been satisfied, and that the Debtor's inter-

est in the plan should not be included in the bankruptcy estate.

■ The conclusion just reached is subject to one limitation. As previously indicated, the Debtor may be entitled to receive a distribution from the plan if his employment is terminated. This right to payment is not a sufficient deviation from the purpose of Section 541(c)(2) so as to find that the trust should be included in the estate. Nevertheless, the event which gives rise to the right to receive a payment is an event that is within the control of the Debtor. This Court does not believe that the Debtor should be required to terminate his own employment for the purpose of making funds available to his creditors. The ramifications of terminating one's employment are sufficiently self-defeating so as to discourage an abuse of the right to receive a payment. However, because the right to receive a payment for employment termination existed at the time the Debtor's Petition was filed, that right became property of the estate pursuant to Section 541(a). Should the Debtor's employment be terminated during the pendency of this case, any monies to which the Debtor would be entitled would be property of the estate.

### V

It has been argued that the creation of an exemption for funds to which a debtor is entitled as the result of his interest in a pension or profit sharing plan impliedly indicates that the debtor's interest in the plan should be made part of the estate. Although this argument initially appears to have some merit, a review of the relationship between the legislative history behind Section 541(c)(2), and the exemption argument leads to the conclusion that it does not. As previously indicated, the legislature intended that a debtor's interest in a "spenthrift trust" not be included in the estate. Since property must first become part of the estate prior to the exercise of an exemption in the property, the argument runs against the fundamental operation of the Bankruptcy Code. This is made especially apparent when it is remembered that there is no significant difference between a traditional spendthrift trust and plans that qualify under ERISA. In that regard, it appears that the exemption provision, as it applies to payments from pension and profit sharing plans, pertains to circumstances where the right to receive such payments actually existed at the time the petition was filed, rather than where the right was only contingent as of the filing of the petition. Therefore, it must be concluded that the provision of an exemption in pension and profit sharing payments is not indicia of the Bankruptcy Code's intent to include in the estate a debtor's interest in an ERISA fund.

### VI

■ Since the Debtor's interest in the trust does not become part of the estate, and since property must become part of the estate in order to exercise an exemption, the question as to the exemptability of the Debtor's interest in the Plan is moot. However, as previously indicated, in the event the Debtor's employment is terminated during the administration of this case, any funds received from the plan upon the termination would be part of the estate. Accordingly, the question is raised as to whether or not the Debtor may exempt the right to receive such payments. In that regard, the provisions of Ohio Revised Code Section 2329.66 state in pertinent part:

"(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(b) The person's right to receive a payment under any pension, annuity, or similar plan or contract ... on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of his dependents ..."

Under this section a debtor is able to exempt from his estate any payments which are received from a pension fund on ac-

count of age, disability, or death, and which are reasonably necessary for the support of the debtor and his dependents. Incumbent in this exemption is the requirement that the monies be paid as a result of one of the named events. The fact that they are paid from a pension type fund is, by itself, insufficient to claim an exemption in those funds.

In the present case, the Court has determined that any monies which the Debtor may receive upon the termination of his employment are property of the estate. Despite the fact that the payment would be received from a pension fund, the payment would not be made as a result of the Debtor's disability, death, or age. Rather, they would have been payable upon the termination of the Debtor's employment. The termination of employment is not an event which, under Section 2329.66(A)(10), effectuates a debtor's right to exempt payments from a pension fund. Since the right to receive such payments does not arise as the result of an event set forth under Section 2329.66(A)(10) it must be concluded that neither the right to receive such funds nor any monies so paid may be claimed as exempt.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Trustee's Objection to the Debtor's Claim of Exemption be, and is hereby, SUSTAINED IN PART.

It is FURTHER ORDERED that if the Debtor becomes entitled to any funds from the pension and profit sharing plan as the result of the termination of his employment during the pendency of this case, these monies will be paid to the Trustee within five (5) days from the date the Debtor receives the monies.

It is FURTHER ORDERED that the Objection to the Debtor's Claim of Exemption be, and is hereby, OVERRULED IN PART as is consistent with this Opinion.