In re Beverly COLLIN, Debtor.

Anne Piero SILAGY, Trustee, Plaintiff,

v.

BANK ONE, AKRON, N.A. and Sue Wemlinger, Defendants.

BANK ONE, AKRON, N.A., Third Party Plaintiff,

v.

Beverly COLLIN, Third Party Defendant.

Bankruptcy No. 92–52348.
Adv. No. 93–5049.

United States Bankruptcy Court, N.D. Ohio.

May 8, 1995.

Ronald G. Macala, Anne Piero Silagy, Shawn C. Groff, Greene, Haines, Sgambati, Murphy & Macala Co., L.P.A., Akron, OH, for plaintiff.

Frank E. Steel, Jr., Hershey & Browne, Akron, OH, for Bank One, Akron, N.A.

Richard A. Wilson, Kent, OH, for debtor.

*FINDINGS OF FACT AND CONCLU-
SIONS OF LAW ON TRIAL ON
TRUSTEE'S COMPLAINT*

H.F. WHITE, Bankruptcy Judge.

This matter came to trial on the complaint filed by the Trustee, Anne Piero Silagy, to avoid preferential transfers. Present at the trial were Anne Piero Silagy ("Trustee"), Richard Wilson for the debtor Beverly Collin ("Debtor"), and Frank E. Steel, Jr. and Linda Kovach for defendant, Bank One, Akron, N.A. ("Bank One"). Sue Wemlinger, one of the defendants, did not appear at trial. After reviewing the record, the exhibits, considering the testimony of the witnesses and presentations of counsel, this court makes the following findings of fact and conclusions of law.

*BACKGROUND AND FINDINGS
OF FACT*

Counsel for the Trustee, Debtor and Bank One submitted a stipulation of fact ("Stipulation") which provides as follows.[1]

1. On October 20, 1992, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Plaintiff, Anne Piero Silagy, was appointed on or about October 30, 1992 as the Interim Trustee.

2. Prior to February, 1992, the Debtor had been employed by Bank One for ten (10) years in various positions. For the last two years, she held the position of senior financial representative at the Randolph branch and was responsible for loan application intakes and processing.

3. On or about October 1, 1991, a loan application was submitted to Bank One in the name of Sue Wemlinger for a consumer loan in the amount of Five Thousand and xx/100 Dollars ($5,000.00). Sue Wemlinger was an acquaintance of the Debtor who lives in Florida. The address of 815 Mill Road, Ravenna, as shown on the loan document, is the residence of Debtor. See, Exhibit B.

4. On or about October 1, 1991, a loan agreement for Five Thousand and xx/100 Dollars ($5,000.00) was executed in the name of Sue Wemlinger by the Debtor with Bank One. This loan was known as loan account number 034–028595. See, Exhibit B.

5. The Debtor received the proceeds of the loan and utilized the loan proceeds for her sole benefit. At all relevant times, the Debtor has considered the loan to be her debt. It appears Sue Wemlinger was unaware of these events.

6. Between October 1, 1991 and March 1992, the Debtor made some payments on loan account number 034–238595. No payments were made by Sue Wemlinger.

7. Some time after February 1, 1992, loan account number 034–028595 became delinquent. No monthly payments were made on this account after February 1, 1992.

8. Prior to March 1992, the Debtor had an interest in a Security Savings Plan with Bank One Corporation. Said plan is a fully qualified ERISA 401(k) plan. See, Exhibit C.

9. On or about February 14, 1992, Bank One, through normal audit proceedings, discovered irregularities in transactions processed by Debtor. Sue Welminger has admitted that the loan in the name of Sue Wemlinger contained an unauthorized signature. Sue Wemlinger also admitted she did not sign or authorize anyone to sign for her. Further, Sue Wemlinger did not receive any part of the loan proceeds from Bank One.

10. On March 23, 1992, the Debtor voluntarily requested withdrawal of her interest in the Bank One Security Savings Plan in order to satisfy the unauthorized loan she obtained from Bank One in the name of Sue Wemlinger and attempted to resolve her liability to Bank One. See, Exhibit D.

11. Sometime after August 17, 1992, the Debtor received Trust Check No. 272150 in the amount of Five Thousand Two Hundred Nineteen and 35/100 Dollars ($5,219.35) from the Security Savings Plan in response to her request for withdrawal. See, Exhibit E.

---

**1.** The reprinting of the Stipulation here is found in findings one through fifteen. The Stipulation includes minor changes to reflect the court's defined terms ("Debtor", "Trustee", "Bank One") as well as references to relevant exhibits.

12. On or about August 20, 1992, the Debtor paid Bank One a portion of the amount owed on loan account number 034–028595, the sum of Four Thousand and xx/100 Dollars ($4,000.00) via a cashier's check. These funds were from the proceeds of Debtor's 401(k) account. The balance was deposited in Debtor's personal checking account.

13. Sometime after September 22, 1992, the Debtor received Trust Check No. 285809, dated September 16, 1992, from Bank One Security Savings Plan in the amount of Two Thousand Nine Hundred Fifteen and 52/100 Dollars ($2,915.52) and deposited that money into her personal checking account. See, Exhibit F.

14. On or about October 2, 1992, the Debtor delivered her personal check number 105 to Bank One in the amount of One Thousand One Hundred Sixty Seven and 34/100 Dollars ($1,167.34) in full payment of the balance due on loan account number 034–028595. These funds were part of the 401(k) proceeds Debtor deposited in her checking account. See, Exhibit G.

15. At all times relevant herein, the Debtor was insolvent.

16. The evidence indicates that when the Debtor deposited funds from her 401(k) account into her personal checking account, the checking account also contained funds from other sources. See, Findings Nos. 12 and 13.

17. Sue Wemlinger filed an answer stating she never applied for a loan from Bank One. Nor did she receive any monies from Bank One. Sue Wemlinger also requested that she be dismissed as a defendant.

### ISSUE ONE

Are the $4,000.00 and $1,167.34 transfers from the Debtor to Bank One avoidable preferences pursuant to 11 U.S.C. § 547?

### CONCLUSIONS OF LAW

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference No. 84–1 entered in this district. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (F).

■ Section 547 of the Bankruptcy Code governs preferences and provides that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property ...

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

It is undisputed that the transfers were made for the benefit of the Debtor and on account of an antecedent debt of the Debtor. It is also undisputed that the transfers were made while the Debtor was insolvent and were made within ninety (90) days prior to the filing of the bankruptcy petition. (Findings Nos. 5, 10, 12, 14 and 15) Further, there is no question that the transfers enabled Bank One to receive more than it would have received if such transfers had not been made and it had received payment of such debt to the extent provided under Chapter 7 of the Bankruptcy Code.

Therefore, the transfers were clearly preferential under 11 U.S.C. Section 547(b) and are subject to avoidance by the Trustee.

### ISSUE TWO

Are the funds transferred from the Debtor to Bank One recoverable by the Trustee,

even though the funds came from a qualified ERISA 401(k) plan with the Debtor's employer, Bank One?

## CONCLUSIONS OF LAW

■ Bank One argues that the transferred funds are not bankruptcy estate property because they are traceable to Debtor's fully qualified ERISA 401(k) plan and, thus, retain exempt status. As such, Bank One asserts that the Trustee is not entitled to recover the property as a preference. The Debtor concurs with Bank One's position.

The Trustee argues that because the Debtor voluntarily withdrew the funds, prior to the petition date, they are not exempt and are subject to her avoidance powers. The Trustee also argues that only the Debtor, not Bank One, may claim any property as exempt from the bankruptcy estate.

Bank One's argument is based on the anti-alienation provision that all qualified ERISA pension plans must contain. "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated". 29 U.S.C. § 1056(d).

Section 541 of the Bankruptcy Code provides, in pertinent part:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

The Supreme Court has determined that the anti-alienation provision of 29 U.S.C. § 1056(d)(1) constitutes a restriction on transfer enforceable under "nonbankruptcy law" and, accordingly, a debtor may exclude his interest in such a plan from the property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). *Patterson v. Shumate*, 504 U.S. 753, 759–60, 112 S.Ct. 2242, 2247–48, 119 L.Ed.2d 519 (1992). In *In re Wiggins*, 60 B.R. 89 (Bankr.N.D.Ohio 1986) Judge Speer addressed the issue of when a debtor's interest in an ERISA plan becomes property of the Chapter 7 bankruptcy estate, and, thus, subject to an exemption. Under the

retirement plan in *Wiggins* the debtor was entitled to receive a distribution if his employment was terminated. Judge Speer stated:

... because the right to receive a payment for employment termination existed at the time the Debtor's Petition was filed, that right became property of the estate pursuant to Section 541(a). Should the Debtor's employment be terminated during the pendency of this case, any monies to which the Debtor would be entitled would be property of the estate. 60 B.R. at 95.

Judge Speer explained that the Debtor's control over his right to receive payment, under the retirement plan, was the determinative factor. Because the Debtor could control his employment, and termination of the same was in his control at the petition date, the right to receive a payment became part of the estate. *Id.*

Bank One presents no authority to support its position that funds withdrawn from an ERISA plan and paid to a third party retain their exempt status. Nor does the ERISA statute provide that distributed pension funds continue to have exempt status beyond the Debtor's possession. Bank One does cite several cases, however, none of them are on point with the facts of this case.

Bank One submits *In re Donaghy,* 11 B.R. 677 (Bankr.S.D.N.Y.1981), which the court finds factually distinguishable from the present case. In *Donaghy,* the husband and wife debtors were elderly and both suffering from serious illness that prevented them from working. The debtors filed their chapter 7 petition *pro se* because they were unable to afford to pay an attorney. The husband received a lump sum distribution from his fully qualified ERISA pension plan just three weeks prior to filing for bankruptcy relief. *Id.* at 678. The debtors claimed the lump sum distribution was exempt under § 522(d)(10)(E) and the trustee objected to the exemption. The trustee claimed the funds had lost their exempt status after distribution and sought to recover them for the estate. *Id.* In holding that the funds retained exempt [2] status, the court stated:

**2.** In *Donaghy* the court addressed the federal

exemptions set forth in 11 U.S.C.

The identifiable sum, although received by the debtors before they could file their joint petition, is a tangible reflection of "the debtor's right to receive ... a payment under a ... pension ... plan" within the literal language of Code § 522(d)(10)(E) and in the spirit of the Congressional intent to exempt qualified pension benefits that are "akin to future earnings of the debtor." *H.R. No. 95,595,* supra.

In its decision the *Donaghy* court stressed that the distribution was essential for the support of the debtors and explained:

> From a factual standpoint the debtors have satisfactorily established that the lump sum pension payment is reasonably necessary for their present and future support during their declining years. At age sixty-two, the debtor, John Donaghy, is no longer able to work due to his emphysema. Aside from his disability payments, the pension fund is the only other resource available to him and his ailing wife, who is two years older. Their medical bills will continue to mount as will their normal requirements for food, clothing and shelter. The special needs of retired, infirm and elderly debtors should be taken into account.

11 B.R. at 680.

Unlike *Donaghy* the Debtor in this case has not presented any special needs related to age or infirmity for the court to consider. The Debtor has not argued that the transferred funds are necessary for her present and future support and maintenance and there is no evidence to support such an argument. In *Donaghy* the court found that because the debtors were unable to work, the lump sum distribution was their major source of income. The Debtor here is able to work and earn an income for her present and future needs. Accordingly, this court finds *Donaghy* is not persuasive authority for the present issue.

Nor does this court find persuasive the cases cited by Bank One regarding attachment of ERISA plan proceeds. Both *Travelers Insurance Companies v. Fountain City Federal Credit Union,* 889 F.2d 264 (11th Cir.1989) and *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980) hold that ERISA plan funds are not subject to garnishment. In both of these cases the garnishments were filed while the funds were held by the plan administrator. That is not the case here.

Finally, Bank One argues that under Ohio law statutorily exempt funds do not lose their exempt status when deposited in a personal checking account. Bank One submits in support *Daugherty v. Central Trust Co.,* 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986); *GMAC v. Deskins,* 16 Ohio App.3d 132, 474 N.E.2d 1207 (1984) and *Goodyear Service Store v. Speck,* 48 Ohio App.2d 115, 355 N.E.2d 886 (1976).

In *Daugherty* the court held that personal earnings exempt from execution, garnishment, attachment or sale pursuant to O.R.C. § 2329.66(A)(13) retain their exempt status when deposited in a personal checking account. 28 Ohio St.3d at 445, 504 N.E.2d 1100. In *Deskins* the court held social security funds in a personal bank account are exempt from attachment based upon the express statutory language "none of the moneys paid or payable ... shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407. 16 Ohio App.3d at 135, 474 N.E.2d 1207. Unlike *Deskins,* no such express statutory language has been presented regarding pension funds.

In *Goodyear Service Store* the court held that funds in a parent's checking account, consisting solely of moneys paid in accordance with aid to families with dependent children, were exempt from attachment. The court reviewed the legislative history of the aid program and stated:

> As used in R.C. 5107.12 and interpreted in accordance with the obvious legislative intent of the aid to dependent children statutes, the word [inalienable] must mean that such aid cannot be transferred from the one for whom it is intended. As currently administered, the transfer payments provided by the aid program are monetary

---

§ 522(d)(10)(E), however, Bank One agrees the result would be the same here under Ohio's exemption statute, O.R.C. § 2329.66, which is applicable here.

in nature. They could consist of all manner of goods or services. In any case, as long as they are used for their intended purpose they are not alienated in the dictionary definition of the word. Were someone to take these monies and use them for a purpose not contemplated by the statutes, the prohibition on alienation (R.C. 5107.12) would be breached, but simple changes in the nature of the transfer payments are not alienation. The 'aid' is subject to the statutory prohibition-not the form of the 'aid.'

48 Ohio App.2d at 117, 355 N.E.2d 886. The holding of this case is clearly distinguishable as it addresses the intent and purpose of the state regarding aid to families with dependent children, not an issue before this court.

None of the cases cited by Bank One address the exempt status of funds from an ERISA plan. Furthermore, in each case the funds were in a personal bank account when the attachment occurred and the court determined they retained their exempt status. Those facts are not present here where the Debtor deposited the funds in her checking account and then voluntarily made payment with the funds. As such, the court finds the cases cited by Bank One lack persuasive authority.

The Third Circuit has held that ERISA funds deposited in a personal bank account are subject to garnishment. *Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9,* 10 F.3d 700, 710 (10th Cir.1993). In *Guidry* the union sought to satisfy a judgment against Guidry by garnishing his bank account containing only pension benefits. The court found that because the garnishment was an action against paid and received income, rather than an action against the plan, it was not prohibited by ERISA regulations. *Id.* at 710 and 716.

In *Velis v. Kardanis,* 949 F.2d 78, 82 (3rd Cir.1991) the court held that ERISA pension payments held by a debtor in possession are property of the bankruptcy estate. In *Velis* after the debtor filed for chapter 11 protection he withdrew the funds in his Keogh plan, IRA and ERISA qualified pension plan. He used the funds to buy an apartment for his medical practice. The debtor claimed his interest in the ERISA pension plan was exempt and excluded from the bankruptcy estate under § 541(c)(2). The court stated:

With respect to the pension plan and the Keogh plan, we conclude that, to the extent the assets in these plans have already been distributed to or for the benefit of the debtor, the debtor no longer has available the protections which might otherwise have been accorded under the ERISA statute. Section 541(c)(2) requires recognition of restrictions upon transfer which are enforceable by law; it does not operate to require non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions.

949 F.2d at 82.

*In re Caslavka,* 179 B.R. 141, 143 (Bankr. N.D.Iowa 1995) contains facts similar to the present case. Prior to filing bankruptcy, the debtor in *Caslavka* terminated his interest in an ERISA qualified pension plan. The proceeds from the plan were rolled over into three annuities, the proceeds from the plan were issued by check sent directly from the plan trustee to the insurance company, which issued the annuities to the debtor. The court found the annuities had no restrictions on transfer and were not subject to ERISA requirements. The court held the annuities were includable as property of the bankruptcy estate, and stated, "when Debtor gained unrestricted access to the Profit Sharing Plan funds, they lost their status as ERISA-qualified such that § 541(c)(2) no longer applies". *Id.* at 143. Other courts have also held that once a debtor gains unrestricted access to funds in an ERISA qualified pension plan, said funds are no longer protected by § 541(c)(2), and are included in the bankruptcy estate. See, *In re Reid,* 139 B.R. 19, 21 (Bankr.S.D.Cal.1992), *In re Toone,* 140 B.R. 605 (Bankr.Mass.1992), and *Yoppolo v. Fifth Third Bank (In re Bostic),* 171 B.R. 270 (Bankr.N.D.Ohio 1994).

This court finds the above authority persuasive in reaching its conclusion that the transfers made by the Debtor to Bank One are recoverable by the Trustee. Upon Debtor's voluntary withdrawal of the funds from her pension plan (Finding No. 10) she gained

unrestricted access to the funds and had the ability and control to use them as she pleased. The unrestricted funds lost their exempt status as ERISA qualified funds and the protection of § 541(c)(2). *In re Caslavka,* 179 B.R. 141 (Bankr.N.D.Iowa 1995). Accordingly, the funds transferred by the Debtor to Bank One are property of the estate and subject to the avoidance powers of the Trustee. Furthermore, the Trustee is entitled to interest on the funds from the date of this complaint. *Bostic, supra.*

### ISSUE THREE

May Bank One or the Debtor claim an exemption in the funds recovered by the Trustee?

### CONCLUSIONS OF LAW

■ The Trustee argues that only the Debtor, not Bank One, may claim the transferred funds as exempt. This court agrees and finds that Bank One's claim that the funds are exempt is unfounded.

Section 522 governs the applicability of exemptions to property recovered by the trustee and provides, in relevant part:

Notwithstanding sections 550 and 551 of this title, the Debtor may exempt under subsection (b) of this section property that the trustee recovers ... to the extent that the debtor could have exempted such property ... if such property had not been transferred if

1. (A) *Such transfer was not a voluntary transfer of such property by the debtor;* and

(B) the debtor did not conceal the property;

11 U.S.C. § 522(g)(1)(A) and (B). (emphasis supplied).

■ As the section indicates, the ability of a debtor to claim an exemption in funds recovered by the Trustee is only available if the transfer was involuntary. Here, however, the parties have expressly stipulated that the transfer of the funds by the Debtor from the 401(k) plan was a voluntary transfer to her personal bank account and then voluntarily transferred to Bank One. (Findings

Nos. 10, 12 and 14). Therefore, she is barred from claiming any exemption.

■ Moreover, only the Debtor, not Bank One, can claim this exemption. As Section 522(g) clearly indicates, only the debtor may exempt property which has been recovered by the trustee. There is no provision in the Bankruptcy Code that allows a creditor to claim an exemption. An assertion of an exemption under bankruptcy law is personal to the debtor and may not be asserted by others on their behalf. *Matter of Osburn,* 56 B.R. 867, 874 (Bankr.S.D.Ohio 1986). *Fox v. Smoker (In re Noblit),* 166 B.R. 906, 908 (Ariz.1994). Therefore, only the Debtor may assert such an exemption. Bank One lacks standing to claim an exemption in the funds.

### THIRD PARTY COMPLAINT

■ Bank One has also filed a third party complaint against the Debtor (Docket No. 6). In the complaint Bank One asserts that if it is ordered to turn over funds to the Trustee, the Debtor would then be liable to Bank One for said amount. Bank One argues that the Debtor obtained the loan by false pretenses, and her debt to Bank One would be nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

The Debtor contends that Bank One has failed to file a timely objection to the discharge of this debt, and thus, is barred from such an action. Section 523(c) provides that the debtor shall be discharged from a debt specified in § 523(a)(2) unless a creditor requests the court determine such debt be excepted from discharge. Under Fed. R.Bankr.Proc ("Bankr.Rule") 4007(c), the creditor must seek this determination no later than 60 days after the first meeting of creditors.

Bank One admits no complaint objecting to discharge was timely filed. However, Bank One claims it could not file a complaint because the existence of any such debt is dependent upon this court's ruling in this preference action. Bank one argues that only when this court rules that the funds transferred by the Debtor are a preference, and must be returned to the Trustee, can a complaint objecting to discharge be filed. No

authority is presented to support Bank One's position.

Bankr.Rule 4007(c) states that the court may, for cause, extend the time fixed for filing a complaint to determine dischargeability of any debt. The motion requesting an extension must be made before the time to file a complaint has expired.

In this case, no motion for extension was filed within the original time prescribed in Bankr.Rule 4007(c). Because of this, the court cannot grant an extension of time to Bank One. However, a complaint other than under § 523(c) may be filed at any time. Bankr.Rule 4007(c). Thus, there may be another basis for Bank One to challenge the dischargeability of this debt.

This court shall enter a separate judgment entry in accordance with these Findings of Fact and Conclusions of Law.

### JUDGMENT ENTRY

Based upon the "Findings of Fact and Conclusions of Law on Trial on Trustee's Complaint" entered on the 8th day of May, 1995;

It is ordered, adjudged and decreed that the transfers of Five Thousand One Hundred Sixty Seven and 34/100 Dollars ($5,167.34) by the Debtor, Beverly Collins, to defendant Bank One, Akron, N.A., are declared null and void pursuant to 11 U.S.C. § 547.

Judgment on the Trustee's Complaint is granted in favor of Anne Piero Silagy, Trustee, and against Defendant Bank One, Akron, N.A., in the amount of Five Thousand One Hundred Sixty Seven and 34/100 Dollars ($5,167.34) plus interest at the federal judgment interest rate from the date of the filing of the complaint.

Bank One, Akron, N.A., shall turnover said funds to the Trustee within ten days of the date of this entry.

Sue Wemlinger is dismissed as a defendant in this action.

On the third party complaint filed by Bank One, Akron, N.A., judgment is granted in favor of the debtor/defendant Beverly Collin and against Bank One, Akron, N.A.