In the Matter of Wilford Wayne BOON, and Donna Faye Boon, Debtors.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

Wilford Wayne BOON, and Donna Faye Boon, Defendants.

Bankruptcy No. 85–04057–SJ.
Adv. No. 86–0385–SJ.[1]

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

May 22, 1987.

---

1. For the reasons stated below in the text of this memorandum, the clerk must now assign an adversary action number to this matter.

Hugh A. Miner, St. Joseph, Mo., for plaintiff.

Mark G. Stingley, Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT THAT PLAINTIFF SHOULD HAVE AND RECOVER THE SUM OF $37,471.93 FROM DEFENDANT DONNA BOON

DENNIS J. STEWART, Chief Judge.

The matter of the trustee's objection to the debtor Donna Faye Boon's claim of exemptions for her interest in ERISA plans came on before the court for hearing of its merits in St. Joseph, Missouri, on August 22, 1986. The plaintiff trustee in bankruptcy then appeared personally and as his own counsel. The debtors appeared personally and also by counsel, Mark G. Stingley, Esquire. The evidence then developed demonstrated that the trustee's request for relief is in substance a complaint for turnover of property alleged to be property of the estate within the meaning of Section 541 of the Bankruptcy Code. It should therefore be filed as an adversary action, as required by Rule 7001(1) of the Rules of Bankruptcy Procedure.[2]

The evidence which was then adduced showed that the debtor Donna Boon has currently, as of the date of bankruptcy, November 12, 1985, an interest in two plans with her employer, the Citizens State Bank of Chillicothe, in a total sum of $54,471.93 [3]; that both of the plans are qualified as ERISA plans [4]; that the debtor's participation in the plans is wholly voluntary on her part [5]; that all contributions to the plans are made by the employer [6]; that the plan contains certain "spendthrift" provisions which comply with the applicable provisions of the Internal Revenue Code [7]; that these provisions, in substance, keep the debtor's interest in the plans from being subject to her claims or those of her creditors until she reaches the age of 65 years or otherwise in exceptional cases of emergency [8]; that, currently, the debtors

---

2. Which provides that actions to recover money or property must be regarded as adversary actions.

3. The amounts shown to be withdrawable in the respective plans are $17,000 (pension plan) and $35,000 (profit sharing plan). But the total interests are $17,472.51 and $35,999.42. The court chooses the latter amounts as reflecting the amounts which the employer has contributed to date and those which more likely reflect the debtor's interest, i.e., that amount which would have otherwise been paid as salary if not reserved for later payment after retirement.

4. See 29 U.S.C. Section 1001, et seq. (1982).

5. The plans respectively expressly provide as follows:
"[P]articipation in the Plan shall be entirely voluntary on the part of each Eligible Employee."

Article II, section 2.2 of the Profit Sharing Plan
"Each Employee who is employed on the effective date, and, by the effective date, has completed 1 year of service and attained age 21, shall become a Participant on the effective date."
Article III, section 2.1 of the Employees Pension Trust. It is the voluntary act of the participant to become employed under such circumstances as require payment into the ERISA plan.

6. See note 3, *supra.*

7. See Section 401 of the Internal Revenue Code.

8. The plans relevantly provide as follows:
"Spendthrift—the interest in this Trust, or any benefits provided hereunder, of or to any Participant or his beneficiary shall in no event be subject to sale, assignment, hypothecation, or transfer by such Participant or his benefi-

have a combined income of some $16,500 per annum, which, according to the schedules which they have filed in these bankruptcy proceedings, slightly exceeds their ordinary monthly expenses[9]; that the debtor Wilford Wayne Boon, however, has leukemia, which is currently being treated by medication and conservative care which Mrs. Boon testimonially estimates to cost $500 to $600 per year; that, however, when Mr. Boon was hospitalized for approximately 8 days in 1982, the cost was in the proximity of $5,000[10]; that the debtors have health insurance which ordinarily pays 80% of their medical bills; that Mr. Boon's physicians believe that he will be able to continue satisfactorily at the present level of medication and conservative care for about 10–12 years, when it is expected that it will be necessary for him to have radical treatment which will cost in the vicinity of $75–85,000; that the illness is conceived of as otherwise being terminal and beyond treatment; that future payments to debtor under the respective plans will depend upon her time in service and level of income[11]; and that the trustee's contention is that the debtors may claim only so much of their interest in the plans as exempt which is reasonably necessary for the support of themselves and their dependents within the meaning of Section 513.430(10)(e) RSMo.

■ The debtors having claimed Mrs. Boon's interest in the plans as exempt and the trustee having inaugurated this action as an objection to exemptions, it would appear that there is no question but that the interests are property of the estate within the meaning of Section 541, *supra*, and *In re Graham*, 726 F.2d 1268, 1272, 1273 (8th Cir.1984), in which it was held that:

> "The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out."

In the course of the hearing of August 22, 1986, however, the debtors, at least by implication, raised the issue of whether the interests should initially be regarded as property of the estate. This court, however, believes itself to be bound by the decision of our court of appeals in *In re Graham*, *supra*, at 1273, to the effect that, "while ERISA-required anti-alienation clauses may preempt state law and preclude the use of judgment enforcement devices provided thereunder, they do not preclude inclusion of pension benefits in a debtor's bankruptcy estate by operation of federal law." The fact remains, as found above, that the debtor's participation in the plans is purely voluntary and has the effect and substance of simply deferring payment of what otherwise would be her current salary. Thus, as this court has previously held in *Matter of Phelps*, Adversary Action No. 86–0024–3 (Bkrtcy.W.D.Mo. July 28, 1986) [available on WESTLAW, 1986WL 22174]:

> "Similarly, the current Bankruptcy Code contemplates that the settlor and the beneficiary be two different persons or two different entities. the legislative history of Section 541(c)(2), *supra*, states in part that the reason for non-inclusion of trusts which are 'protected from creditors under applicable state law' is that '[t]he bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of

ciary, and each Participant or his beneficiary is hereby prohibited from anticipating, pledging, assigning or alienating his interest in this Trust or in any account or benefit hereunder. The interest of any Participant or of his beneficiary shall not be liable or subject to the debts, liabilities, or obligations of the Participant or the beneficiary, nor shall the same or any part thereof be subject to any judgment rendered nor to any levy, execution, attachment, garnishment, or other legal process. This provision shall not apply to qualified domestic relations orders or applicable income tax withholding."

9. The debtors schedule $850.00 monthly income; $954.00 monthly expenses. But the testimony in the hearing shows $16,599 annual income.

10. There is no contradiction of her testimony to this effect.

11. Testimony of Ross Lillard, Esquire, of Stinson, Mag & Fizzell.

the trust.' H.R.Rep. No. 995, 95th Cong., 1st Sess. 175–76 (1977), reprinted in 1978 *U.S. Code Cong. & Admin. News* 6136. Debtors should not be granted the power to defeat the just claims of their creditors through the expedient of creating their own spendthrift trusts so that, at the expense of their creditors, they build up rights to significant delayed benefits. In other contexts, when debtors in bankruptcy proceedings take advantage of anomalous legal provisions to keep their property from their trustee in bankruptcy even as they seek a discharge of their debts, the authorities have characterized it as 'legal fraud.' See, e.g. *Phillips v. Krakower*, 46 F.2d 764 (4th Cir.1931); *In re Magee*, 415 F.Supp. 521 (W.D.Mo.1976). If the rule is recognized that ERISA contributions are not includible in the bankruptcy estate, the opportunity will be created for the commission of 'legal fraud,' whereby one may save for the future at the expense of his or her current creditors, on a much larger scale than that denounced in *Phillips v. Krakower, supra.*

"It was never intended that the Bankruptcy Code be used in this manner. As the court stated in *Matter of Goff, supra*, 706 F.2d [574] at 580 [ (5th Cir. 1983)]:

'Congress did not evidence an intent, by reference to "applicable nonbankruptcy law" to include an ERISA plan exemption. Rather, we find that Congress intended to exclude only trust funds in the nature of "spendthrift trusts" from the property of the estate. In general terms, a spendthrift trust is created to provide a fund for the maintenance of a beneficiary, with only a certain portion of the total amount to be distributed at any one time. The settlor places "spendthrift" restrictions on the trust, which operate

in most states to place the fund beyond the reach of the beneficiary's creditors, as well as to secure the fund against own improvidence. *Although a given state's non-bankruptcy law of spendthrift trusts might afford protection to a particular pension trust, it is clear in the immediate case that appellant's self-settled trust did not constitute a spendthrift trust entitled to exclusion under relevant state law.'* (Emphasis added.)

"In the action at bar, the same kind of 'self-settled' trust is the subject of litigation. Accordingly, this court reflects the contention that it *should* be excluded from the estate."

And see *In re Daniel*, 771 F.2d 1352, 1362 (9th Cir.1985), to the following: "[T]he anti-alienation provisions of ERISA and the Internal Revenue Code do not create Federal non-bankruptcy exemptions for ERISA qualified plans under 11 U.S.C. Section 522(b)(2)(A)." This court therefore holds that the debtor's interest in the ERISA plans is property of the estate.

■ The critical question, then, is that of how much of the interest is reasonably necessary for the support and maintenance of the debtors and their dependents within the meaning of the above-cited exemption statute. On this issue, as the findings of fact made above demonstrate, the evidence is sparse, inchoate and difficult to interpret. But it does show convincingly the near certainty that, because of Mr. Boon's leukemia, the debtors will encounter economic demands in the future which, without resort to these funds, they are unlikely to be able to meet. Thus, while in the ordinary case, the courts may be able to preclude the fund's necessity by reason of the debtor's voluntarily deferring his or her right to payment of them, see *Matter of Phelps, supra,*[12] the extraordinary circum-

---

**12.** "That provision, however, necessarily refers to presently payable, rather than deferred, benefits such as are the case with respect to an ERISA plan. For, as a matter of law, it cannot be said that monies which the debtor has voluntarily placed in a self-settled trust to be kept until a considerably later date are in any way necessary for his or her support and mainte-

nance or that of his dependents. If the holding were otherwise, debtors would be enabled to enrich themselves, boldly and with calculation, at the expense of their creditors. Accordingly, this court rejects the contention that the debtors' interest in the ERISA plan constitutes exempt property under the Missouri scheme of exemptions."

stances of this action compel the court to make the determination of necessity. In doing so, because of the paucity of evidence, the court must be justified in assuming that the debtor's interests in the plans —presently $54,471.93, as found above— will continue to build at the same rate as they have hitherto in the six-year life of the debtor's plans. Thus, the above figure is six-tenths of what the interest will be in ten years—$90,119.90. It is presumed, in the absence of evidence to the contrary, that the future accumulations of the debtor's interest will be necessary to her support and maintenance in the period beyond the period of the next ten years. Over this ten-year period, according to the uncontradicted testimony of Mrs. Boon, the debtors will have incurred—in addition to the scheduled expenses of $954 per month ($11,448 per year; $114,480 for the full ten year period)—medical expenses of $5,000 for the 1982 hospitalization, $5,000 for medication and conservative treatment ($500 per year for ten years) and $75,000 for the radical treatment which will be necessary at the conclusion of the ten year period. Because of the uncontradicted testimony of Mrs. Boon as to the availability of health insurance to pay 80% of the medical expenses, medical expenses must be reduced in the calculation to 20% of the $85,000 total—a product of $17,000. The total expenses for the ten years—$114,480—are more than equalled by the income of $165,-000 for the ten-year period. Therefore, $17,000 must be subtracted from the debtor's present interest—$54,471.93 [13]—to yield the amount which is payable to the trustee. That difference is the sum of $37,471.93.

After the preparation of the foregoing findings of fact and conclusions of law, the court circulated them to the parties with an order directing them to show cause why the findings and conclusions should not be made the subject of a judgment for plaintiff in the sum of $37,471.93.

In response to that order, counsel for the debtors has responded to the principal effect that the ERISA plans in this case are demonstrated by the evidence to comply with the Missouri law defining spendthrift trusts and therefore cannot, under the abovementioned legislative history of Section 541 of the Bankruptcy Code, be regarded as part of the bankruptcy estate. But Missouri law, like Utah law recently explicated by the Utah bankruptcy court in *In re Kerr*, 65 B.R. 739 (Bkrtcy.D.Utah 1986), does not recognize self-settled trusts such as those which are involved in the case at bar.[14] This holding is in consonance with a recent ruling by Judge See of this court.[15] The federal appellate court decision in *McLean v. Cent. States, S. & S. Areas Pen. Fund*, 762 F.2d 1204 (4th Cir. 1985), appears to have involved a governing state law which recognized self-settled trusts as valid spendthrift trusts. Further, in the following words, the court in that case recognized that the rule of the Eighth Circuit is to the effect that ERISA funds are to be brought into the estate and that the only cognizable issue is whether or not they can be considered exempt:

> "First, the trustee urges that because pension interests are made expressly subject to exemptions by a bankrupt under 11 U.S.C. Section 522(d)(10), they

13. See note 3, *supra.*

14. "The Utah cases cited suggest that Utah would follow the traditional view and hold that restrictions on alienation will *not* be enforced against creditors if the trust is self-settled, that is, if the settlor and the beneficiary of the trust are the same person. See 4 G. Bogert, THE LAW OF TRUSTS AND TRUSTEES, Section 233 (2d ed. 1966); 2 A. Scott, THE LAW OF TRUSTS, Section 156 (3d ed. 1967); E. Griswold, SPENDTHRIFT TRUSTS, Section 474, at 543 (2d ed. 1947); Restatement (Second) of Trusts, Section 156(1)." (Emphasis in original). *Kerr*, 65 B.R. at 745. And Cf. Section 456.080(3)

RSMo to the effect that "[i]f the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from his interest in the trust estate.

15. See *In re Bartlett*, 67 B.R. 455 (Bkrtcy.W.D. Mo.1986) ("The Court finds the ERISA funds in property of the estate pursuant to 11 U.S.C. Section 541(a)(1) as held by the Eighth Circuit in *In re Graham*, 726 F.2d 1268, 1272[3] (8th Cir.1984).")

must of necessity be estate property under 541(a)(1) ...

"Two circuits have apparently accepted this argument, See *Samore v. Graham (In re Graham),* 726 F.2d 1268, 1272-3 (8th Cir.1984); *Regan v. Ross,* 691 F.2d 81, 86 (2nd Cir.1982) ... As the *Goff* court pointed out, Section 522(d)(10)(E) makes a broad array of employment benefits, including those embodied in certain qualified and unqualified pension plans, subject to exemption. *Id.* at 587. Section 541(c)(2) is simply a more narrowly focused provision that excludes from estate property some, but not all, of the employment benefits which, if included in estate property, might then be subject to exemption by the debtor under Section 522(d)(10)(E)."

*McLean, supra,* 762 F.2d at 1207-8. To invoke any other rule, moreover would seem not only to affront the rule of the *Graham* case, *supra,* but to bring about a situation whereby potential debtors could settle their own trusts and thereby force their creditors to bear the expense of their ERISA pension program. The fiction upon which some decisions base a holding that ERISA funds are excluded from the estate —that only the employer makes contributions to the plan [16]—amounts to a blind acceptance of the employer's disguised payments of salary. The bankruptcy court, as a court of equity, is charged with the duty of looking through form to substance. *Katz v. First Nat. Bank of Glen Head,* 568 F.2d 964, 970 (2nd Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1250, 55 L.Ed2d 771 (1978). And that is what the bankruptcy court is compelled to do in this case, as well as in its prior decision in *Matter of Phelps, supra.* Other contentions of the debtor [17] and the trustee [18] are without merit.

16. See, e.g., *McLean v. Cent. States, S. & S. Areas Pen. Fund,* 762 F.2d 1204, 1207 (4th Cir.1985) ("Contributions to the Central Fund are made only by employees and the employees have no power to revoke the trust and reach its corpus. Public policy concerns would not therefore prevent enforcement of this restriction under controlling nonbankruptcy state law.")

17. There are some contentions which the defendant Donna Faye Boon has made in her brief which are patently without merit. They are as follows: (1) It is contended that the finding of the court that insurance will pay 80% of the medical bill is erroneous. But curiously, in support of that contention she cites her own testimony to the effect that "[w]e pay the first $100.00, and then they [Blue Cross] are supposed to pay 80 percent of his bill." Counsel for debtors superadds that this can be construed to mean only 80% of what is reasonable." The court, however, cannot assume that an unreasonable amount of charges will be incurred; (2) It is next contended that "spendthrift trusts are held to be exempt from execution except in certain circumstances." But, in support of that contention, defendant cites Section 456.080 RSMo, which expressly provides that *self-settled trusts* are not exempt. See Section 456.080(3) to the effect that, "[i]f the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from his interest in the trust estate"; (3) It is next contended that, even if the court holds that the ERISA should be part of the estate, Donna Faye Boon should be directed to pay over only $30,482.93 rather than the $37,471.93 found by the court. In making its computation, the court considered the full amount prospectively to be paid into the plan over its life as the basis. This seems to be made necessary by the contention of the debtor Donna Faye Boon that this court, in determining the amounts reasonably necessary for her and her dependents' support within the meaning of Section 513.430(10)(e) RSMo, must consider the future expenses. If the future expenses must be considered, so must the future interest. Defendant insists that only the currently vested amount can be considered. But this would create a wholly unrealistic analysis in defendant's favor, whereby all future expenses would be subtracted from the amount currently vested, even though future vested interests in the plan would be equally available to them. The amount awarded to the trustee, it must be observed, is less than the amount which is currently admittedly vested; (4) The defendant finally contends that "some provision should be made that the trustee should be the responsible party for the payment of whatever tax consequence occurs from the turnover of the funds." But this issue was neither joined by the pleadings, nor was it tried, nor has it been sufficiently briefed.

18. The trustee's principal objection to the court's judgment is that "the Court has overlooked Section 451.250 which states that Donna Faye Boon shall not be liable for the debts of her husband. Therefore, he argues that none of the interest of Donna Faye Boon on the plans should be regarded as exempt. In reality, however, it is possible—and seems likely under the circumstances of this case—that the husband may be the dependent of the wife within the meaning of the governing Missouri exemption statute, which exempts "payment[s] under a

Accordingly, it is therefore

ORDERED, ADJUDGED, AND DE-CREED that the defendants turn over to the trustee from Mrs. Boon's plans the sum of $37,471.93.

stock bonus, pension profit-sharing, annuity or similar plan ... to the extent reasonably necessary for the support of such person and *any* *dependent* of such person ..." (Emphasis added.) Section 513.430(10)(e) RSMo.