In re Wilford Wayne BOON and
Donna Faye Boon, Debtors.

Wilford Wayne BOON and Donna
Faye Boon, Appellants,

v.

Hugh A. MINER, Trustee, Appellee.

Bankruptcy No. 85–04057–SJ.

Adv. No. 86–0385–SJ.

No. 87–6100–CV–SJ–8.

United States District Court,
W.D. Missouri,
St. Joseph Division.

Aug. 7, 1989.

698

Hugh A. Miner, St. Joseph, Mo., appellee, pro se.

Mark G. Stingley, Linde, Thompson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for appellants.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

This is an appeal from the bankruptcy court's order directing appellants to turn over $37,471.93, representing their vested interest in pension and profit sharing plans

1. Because of the potential significance of this issue for all employers who provide ERISA

administered by appellant Donna Faye Boon's employer. *See Matter of Boon*, 90 B.R. 988 (Bankr.W.D.Mo.1987). The court notes appellate jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons discussed hereafter, the decision of the bankruptcy court will be reversed.

### I. Background

This appeal calls for the court to decide whether a debtor's interest in an employer funded retirement or profit sharing plan can ever be excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Appellants argue that such plans can and should be excluded from the estate as spendthrift trusts under Missouri law. Appellee contends that a debtor's interest in an employee benefits plan can never be excluded from the estate, but must instead be dealt with as a matter of exemption, subject to the limited discretion of the bankruptcy court pursuant to 11 U.S.C. § 522. The question presents numerous, sometimes conflicting policy considerations, which may affect the future establishment and administration of such pension plans.

The facts of this case, as found by the bankruptcy court, are as follows. On November 12, 1985, debtors/appellants Wilford Wayne Boon and Donna Faye Boon filed for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq.* At that time, Donna Boon had interests in a pension plan and a profit sharing plan administered by her employer, the Citizens State Bank and Trust Company of Chillicothe, Missouri (Citizens).[1] Both plans were qualified under the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Debtors claimed an exemption for all interests in the plans and the trustee objected. After a hearing on the merits, the bankruptcy court found that Donna Boon had a vested interest in the plans totaling $54,471.93.

As required by both the Internal Revenue Code, 26 U.S.C. § 501(a) and ERISA, 29 U.S.C. § 1056(d)(1), both plans contain the following anti-alienation clause:

plans, the court has granted Citizens leave to file an amicus curiae brief in this appeal.

Spendthrift—the interest in this Trust, or any benefits provided hereunder, of or to any Participant or his beneficiary shall in no event be subject to sale, assignment, hypothecation, or transfer by such Participant or his beneficiary, and each Participant or his beneficiary is hereby prohibited from anticipating, pledging, assigning or alienating his interest in this Trust or in any account or benefit hereunder. The interest of any Participant or of his beneficiary shall not be liable or subject to the debts, liabilities, or obligations of the Participant or the beneficiary, nor shall the same or any part thereof be subject to any judgment rendered, nor to any levy, execution, attachment, garnishment, or other legal process. This provision shall not apply to qualified domestic relations orders or applicable income tax withholding.

The court found that these provisions were designed to "keep the debtor's interest in the plans from becoming subject to her claims or those of her creditors until she reaches the age of 65 years or otherwise in exceptional cases of emergency." *Matter of Boon*, 90 B.R. 988, 989 (Bankr.W.D.Mo. 1987). The court further recognized that all contributions to the plans were made by Citizens and that Mrs. Boon was a "voluntary participant" in both plans.

At the time of the hearing, the Boons had a combined income of approximately $16,500 per year, representing Mrs. Boon's salary at Citizens. Before bankruptcy, Mr. Boon was a farmer. However, because Mr. Boon suffers from incurable leukemia, he is no longer able to work and the Boons will doubtless expend considerable sums on health care over the remaining ten to twelve years he is expected to live.[2]

Given these facts, the bankruptcy court found that the debtors' interests in the pension and profit sharing plans must be deemed property of the estate within the meaning of 11 U.S.C. § 541. The court rejected debtors' argument that the interests are excludable as proceeds of a "spendthrift trust" under section 541(c)(2). Instead, the court held that debtors' $54,471.93 of vested interest in the plans would become part of the estate, subject only to the exemption provisions of section 522(b)(2)(A). The court then concluded that in view of Mr. Boon's expected medical expenses, $17,000 must be deducted as "reasonably necessary for the support and maintenance of debtors," leaving a difference of $37,471.93 to be paid into the estate out of the plan interests.

In reaching its decision, the bankruptcy court purported to follow *In re Graham*, 726 F.2d 1268 (8th Cir.1984). The court read the *Graham* holding to prohibit absolutely the exclusion of pension funds from the estate under section 541(c)(2), which was designed to protect settlors of spendthrift trusts enforceable at state law. *See Boon*, 90 B.R. at 990. The court also characterized both plans in question as "self-settled" trusts—which are not recognized as valid in Missouri—without explaining exactly how it reached that conclusion. *See id.* 992–93.[3] The fear expressed by the court was that, by allowing a section 541 exclusion for ERISA plans, "potential debtors could settle their own trusts and thereby force their creditors to bear the expense of their ERISA pension program." *Id.* at 993.

The *Graham* holding, as interpreted by the bankruptcy court, is at odds with virtually every other federal court which has decided the question. Indeed, the vast majority of courts have concluded that, under certain circumstances, ERISA plans may qualify as spendthrift trusts and are hence excludable under section 541(c)(2). Many

---

**2.** Specifically, the bankruptcy court found that up to the date of the hearing the Boons had incurred medical costs of between $500 to $600 per year, but that radical treatment would eventually be necessary, costing somewhere in the vicinity of $75,000 to $85,000. *Boon*, 90 B.R. at 990. The court also noted that the debtors have health insurance which pays up to eighty percent of their medical bills. *Id.*

**3.** It is unclear why the bankruptcy court undertook this line of analysis, since it had already concluded that *Graham* placed ERISA benefits beyond the reach of section 541(c)(2), regardless of whether pension plans are characterized as spendthrift trusts or self-settled trusts.

of these courts read *Graham* to be entirely consistent with this conclusion, while others interpret it like the court below—in which case the holding has met with criticism. Within the Eighth Circuit, *Graham* has generated a bona fide split, with a handful of courts finding that ERISA benefits can never be excluded from the estate under any circumstances. Yet, at least a half dozen courts within this Circuit have held otherwise, finding that some ERISA plans may be excludable as spendthrift trusts under *Graham*. Although the dispositive resolution of this conflict may require another word from the Eighth Circuit, this court believes that *Graham* may be read consistently with the vast majority of other federal court decisions allowing exclusions under certain, specific circumstances.

## II. Analysis

### A. The Majority View of Section 541(c)(2)

Among the innovations of the Bankruptcy Code was the creation of a comprehensive provision designed automatically to bring all property in which the debtor has a legal or equitable interest within the scope of the estate. *See* 11 U.S.C. § 541(a)(1). The legislative history behind the Code suggests that this provision was intended to be far reaching, vastly simplifying the method for determining the scope of the estate that existed under the old Bankruptcy Act. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983).[4] Under the Code, "all property of the debtor, even property necessary for a fresh start, is included in the estate ... [a]fter the property comes into the estate, the debtor is then permitted to exempt property needed for a fresh start." *In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984). Property is exempted from the estate pursuant to section 522, or under any applicable state exemptions available as provided in section 522(b). In contrast, under section 541(c)(2), property never actually enters the estate.

Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." This paragraph effectively amounts to an exception to the broad definition of property contained in section 541(a)(2). The key in applying section 541(c)(2) is an understanding of exactly what is meant by "applicable nonbankruptcy law." Several early cases adopted a literal reading, allowing exclusions for transfer restrictions normally enforceable under ERISA. *See In re Threewitt*, 24 B.R. 927, 929 (D.Kan.1982); *In re Pruitt*, 30 B.R. 330, 331 (Bankr.D.Co. 1983). Under these cases, ERISA—and its anti-alienation clause requirement—may provide the basis for an exclusion as "applicable nonbankruptcy law." This view has since been rejected by virtually every court to consider the question, including *Graham*.

The first extensive treatment of section 541(c)(2) and its application to ERISA plans can be found in *Matter of Goff*, 706 F.2d 574 (5th Cir.1983). In *Goff*, the debtors argued that their ERISA-qualified Keogh plans should be excluded from the estate under that section, because the plans included anti-alienation restrictions as required by ERISA and the Internal Revenue Code. After undertaking an extensive analysis of the legislative history behind section 541(c)(2), the court concluded that "Congress did not evidence an intent, by reference to 'applicable nonbankruptcy law' to include an ERISA plan·exemption." *Id.* at 580. Rather, that statute was intended only to allow those restrictions on transfer recognized by state law. *Id.* at 582. As explained in the House Report accompanying the original bill, section 541(c)(2) "preserves restrictions on transfer of a *spendthrift trust* to the extent that the restriction is enforceable under nonbankruptcy law." *Id.* at 581, (quoting H.R.Rep. No. 95–595, 95 Cong., 2d Sess. 369 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6325 (emphasis added)). The

---

**4.** *See also* S.Rep. No. 95–989, 95 Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5868; H.Rep. No. 95–595, 95th

Cong., 2d Sess. 175 (1977), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5963, 6136.

*Goff* court held that ERISA itself could not provide a basis for an exclusion under section 541(c)(2), but found "no reason to doubt that ERISA-qualified pension funds are included in section 541[ (c)(2) ] if they qualify as spendthrift trust plans under state law." *Id.* at 587.

Under *Goff,* courts must determine whether a given ERISA pension plan meets the requirements for an enforceable spendthrift trust under applicable state law. If the plan's anti-alienation provision enables the plan to qualify as a spendthrift trust in states which recognize such trusts, then the plan funds are excludable under section 541(c)(2). *Id.* The *Goff* decision has recently been reaffirmed by the Fifth Circuit, *see Matter of Brooks,* 844 F.2d 258, 261 (5th Cir.1988), and has been followed by the vast majority of federal courts. *See McLean v. Central States, Southeast and Southwest Area Pension Fund,* 762 F.2d 1204, 1206 (4th Cir.1985) (ERISA plans excludable if they qualify as spendthrift trust); *In re Daniel,* 771 F.2d 1352, 1359–60 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986) (same); *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985) (same); *In re Goshe,* 85 B.R. 157, 159 (Bankr.M.D.Fla.1988) (same); *In re Hysick,* 90 B.R. 770, 772–73 (Bankr.E.D.Pa.1988) (same); *Matter of Gifford,* 93 B.R. 636, 638–39 (Bankr.N.D.Ind. 1988) (same); *In re Hohl,* 81 B.R. 450, 453 (Bankr.N.D.Ill.1987) (same); *In re Dagnall,* 78 B.R. 531, 533 (Bankr.C.D.Ill.1987) (same); *In re Monahan,* 68 B.R. 997, 999 (Bankr.S.D.Fla.1987) (same); *In re Faulkner,* 79 B.R. 362, 365 (Bankr.E.D.Tenn. 1987) (same); *In re Pilkington,* 89 B.R. 911, 918 (N.D.Ala.1987) (same); *In re Wiggins,* 60 B.R. 89, 92 (Bankr.N.D.Ohio 1986) ("there is little, if any, difference in [the] basic purpose and operation [of spendthrift trusts and ERISA plans]"); *In re Slezak,* 63 B.R. 625, 628 (Bankr.W.D.Ky.1986) (follows *Goff*); *In re West,* 64 B.R. 738 (Bankr.D.Ore.1986), *aff'd,* 81 B.R. 22 (9th

Cir.1987) (same); *In re Kerr,* 65 B.R. 739, 744 (Bankr.D.Utah 1986) (same); *In re Forbes,* 65 B.R. 58, 59 (Bankr.S.D.Fla.1986) (same); *In re Ridenour,* 45 B.R. 72, 78 (Bankr.E.D.Tenn.1984) (same); *In re Jones,* 43 B.R. 1002, 1006 (N.D.Ind.1984) (same); *SSA Baltimore Federal Credit Union v. Bizon,* 42 B.R. 338, 340 (D.Maryland 1984) (same); *In re Kwaak,* 42 B.R. 599, 561–63 (D.Maine 1984) (same).

## B. The Graham Decision

■ The Eighth Circuit first considered whether ERISA plans can be excluded from the estate under section 541(c)(2) in *In re Graham,* 726 F.2d 1268 (8th Cir. 1984). In *Graham* the debtor was a doctor who established an ERISA qualified profit sharing plan through his professional corporation. The plan contained an anti-alienation clause as required by ERISA, 29 U.S.C. § 1056(d)(1). On Appeal, Dr. Graham argued that "applicable nonbankruptcy law" includes ERISA, "which has been construed as precluding the garnishment of benefits under a qualified plan by a general creditor of a plan beneficiary." *Id.* at 1270. The court rejected this argument, concluding that

> [t]he change in the scope of the property of the estate effected by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provisions of the Code and the preemption provision of ERISA all convince us that Congress did not intend 'applicable nonbankruptcy law' to include ERISA. Rather, Congress only intended by § 541(c)(2) to preserve the status traditional [sic] spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act.

*Id.* at 1271.

Critical to the court's reasoning process was the fact that "pension benefits" are specifically treated under one of the Bankruptcy Code's exemption provisions, 11 U.S.C. § 522(d)(10)(E).[5] Because a debtor's

---

5. Section 522(d) provides an exemption for:
   (10) The debtor's right to receive—
   . . . .
   (E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan

   or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

pension benefits may be dealt with as a matter of exemption under section 522, the court concluded that such benefits "were intended and assumed to be part of the estate." *Id.* at 1272. Thus, the court concluded that "ERISA-required anti-alienation clauses ... do not preclude inclusion of pension benefits in a debtor's bankruptcy estate by operation of federal law." *Id.* at 1273.[6]

Whether an ERISA plan can ever qualify as a "traditional spendthrift trust" was not strictly at issue in *Graham*. Although the *Graham* court cited with approval the Fifth Circuit's holding in *Goff, id.* at 1273, the court did not discuss the fact that *Goff* allowed for the possibility that ERISA plans may be excluded as spendthrift trusts. Interestingly, it should be noted that the bankruptcy court in *Graham* did analyze whether the debtor's profit sharing plan qualified as a spendthrift trust under Iowa law, answering the question in the negative. *See In re Graham*, 24 B.R. 305, 310 (Bankr.N.D.Iowa 1982). In any event, the most narrow, and safest, reading of the Eighth Circuit's opinion in *Graham* is that ERISA pension plans may not be excluded under section 541(c)(2) merely because they are ERISA pension plans. Beyond that, the reader must employ a certain amount of guesswork.

A few courts have found language in *Graham* which seems to imply that ERISA plans may never benefit from "nonbankruptcy law" exclusions. These courts have focused on *Graham*'s analysis of the Code's exemption system under section 522, which is said to result in a "coherent scheme regarding a debtor's pension rights ... consistent with the Code's general policy." *Graham*, 726 F.2d at 1272. This scheme, the court reasoned, calls for the

"question of pension rights [to be] dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out." *Id.* at 1272–73. Several courts have concluded that this language means that ERISA plans must always come into the estate and may never be excluded, regardless of whether they meet all state law criteria for a spendthrift trust. *See, e.g., In re West*, 64 B.R. 738, 741 (Bankr.D.Ore.1986), *aff'd*, 81 B.R. 22 (9th Cir.1987) ("*Graham* ... appears to hold that ERISA plans are never excluded from the estate by § 521(c)(2)"); *In re Dagnall*, 78 B.R. 531, 533 (Bankr.C.D.Ill.1987) (construes *Graham* similarly). When *Graham* has been read in such a fashion, it has generally been rejected. *See id.; West*, 64 B.R. at 742; *see also In re Hysick*, 90 B.R. 770, 772 (Bankr.E.D.Pa.1988); *In re Hohl*, 81 B.R. 450, 453 (Bankr.N.D.Ill.1987).[7]

Other courts have had no problem interpreting *Graham* and *Goff* consistently, often citing the two opinions to stand for essentially the same premise. *See, e.g., In re Ridenour*, 45 B.R. 72, 76–77 (Bankr.E.D. Tenn.1984); *see also In re Faulkner*, 79 B.R. 362, 365 (Bankr.E.D.Tenn.1987); *In re Slezak*, 63 B.R. 625, 628 (Bankr.W.D.Ky. 1986). Thus, *Graham* has also been read to have the *Goff* result implicit in its holding—only spendthrift trusts are excludable under section 541(c)(2); hence, ERISA plans are only excludable if they qualify as a spendthrift trust.

Within the Eighth Circuit, *Graham* has continued to generate no small amount of confusion. Several courts have held, like the bankruptcy court below, that ERISA pension funds always come directly into the estate, and may only be exempted under

---

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, 409 of the Internal Revenue Code of 1954....

**6.** The court also determined that ERISA was not "federal law," entitling the debtor using a state exemption system to an exemption under section 522(b)(2)(A). *Id.* at 1274. The Fifth Circuit had previously reached the same conclusion in *Goff,* 706 F.2d at 585.

**7.** *Cf. Regan v. Ross,* 691 F.2d 81, 86 (2d Cir. 1982) (doubting that pension benefits are within the ambit of section 541(c)(2), but holding that section inapplicable for a different reason).

section 522. For example, although acknowledging that the issue was not raised on appeal, one court has determined that "*Graham* seems to compel the conclusion that ERISA plans are not and cannot be traditional spendthrift trusts protected from becoming property of the estate under 11 U.S.C. § 541(c)(2)." *In re Loe*, 83 B.R. 641, 645 (Bankr.D.Minn.1988). The court in *Loe* based its conclusion on what is arguably *Graham* dicta ("a debtor's interest in pension funds first comes into the bankruptcy estate," 726 F.2d at 1272), while failing to discuss the implications of *Goff* and its progeny—all of which reach a contrary conclusion. Likewise, in *In re Bowen*, 80 B.R. 1012 (Bankr.D.S.D.1987), the court found that under *Graham* an ERISA plan does not qualify as a "traditional spendthrift trust." *Id.* at 1016–17. The *Bowen* court reasoned that the legislative history behind section 541(c)(2) indicates that it was intended to preserve "only those spendthrift trusts contemplated under the 1898 Bankruptcy Act, and not the ERISA-qualified retirement plans created by Congress in 1974." *Id.* at 1016.[8]

Other cases adopting a similar reading of *Graham* have concluded that "it is unnecessary to examine the provisions of [a] pension plan to determine whether it might be excluded from the estate as a valid spendthrift trust." *In re Flygstad*, 56 B.R. 884, 887 (Bankr.N.D.Iowa 1986). Instead, regardless of the characteristics of the particular fund, it is to be dealt with under the exemption scheme of section 522. *Id.; see also In re McKenna*, 58 B.R. 221, 223 (Bankr.N.D.Iowa 1985) ("ERISA pension is property of the estate subject only to available exceptions"); *cf. In re Bartlett*, 67 B.R. 455, 456 (W.D.Mo.1986) (holding that ERISA funds are part of the estate but not addressing spendthrift trust question). By and large all of these courts have read *Graham* expansively, without reference to the great majority of cases following *Goff* and without discussing the important policy

implications for both bankruptcy and ERISA law.

Still other courts within the Eighth Circuit have chosen to construe *Graham* narrowly, consistent with *Goff, McLean*, 762 F.2d 1204, and *Lichstrahl*, 750 F.2d 1488. Most recently, in *Matter of O'Brien*, 94 B.R. 583 (W.D.Mo.1988), the court considered whether the debtor's ERISA profit sharing plan was a spendthrift trust under Missouri law, thus "protect[ing] [it] from claims of a bankruptcy trustee." *Id.* at 586. Because the debtor held the power to revoke the "trust" at any time, the court held that the plan was not a valid spendthrift trust under Missouri law. This approach was also taken by the court in *In re Hansen*, 84 B.R. 598, 601 (Bankr.D.Minn. 1987). Both cases interpret *Graham* to allow for the possibility that a pension plan can qualify as a spendthrift trust for purposes of section 541(c)(2). Indeed, at least three other courts have proceeded similarly, expressly holding that "[i]f a pension plan qualifies as a traditional spendthrift trust, a debtor's interest in the trust would then not be an asset of the bankruptcy estate." *In re Taylor*, 84 B.R. 159, 160 (Bankr.E.D.Mo.1988); *In re Wallace*, 66 B.R. 834, 839–40 (Bankr.E.D.Mo.1986) (same); *In re Rodriguez*, 82 B.R. 74, 76 n. 2 (Bankr.E.D.Ark.1987) (rejecting any reading of *Graham* that would preclude spendthrift trust analysis with respect to pension plans). Clearly, the lower courts have not agreed on the meaning or implications of the *Graham* opinion.

In the interim since *Graham* was decided, the Eighth Circuit Court of Appeals has revisited the question but twice. In *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1224–25 (8th Cir.1987), the court cited *Graham*, stating that "under section 541, a debtor's interest in a retirement fund should be considered estate property, then exempted if it qualifies as a 'spendthrift trust' under relevant state law." Finding that there was insufficient evidence on the

---

**8.** *But compare, McLean*, 762 F.2d at 1207 n. 1 ("The language of § 541(c)(2) does not suggest such a limitation, and the legislative history reveals only that the provision has the unambiguous purpose of preserving enforceable transfer restrictions in spendthrift trusts.... Nowhere in the statute is there a requirement that the trust be 'traditional,' nor is there any definition of what might be found to constitute a 'traditional' trust").

record for the bankruptcy court to have made such a determination, the court did not address the issue further. This rather cryptic reference to *Graham* appears to confuse the difference between "exemption" and "exclusion," for a fund's status as a spendthrift trust is primarily important when considering the question of exclusion under section 541(c)(2), not exemption under section 522.

*Graham* was again discussed at some length in *In re Swanson*, 873 F.2d 1121 (8th Cir.1989). *Swanson* involved a dispute over whether the interests of Minnesota teachers in a state (non-ERISA) pension fund were excludable from the bankruptcy estate under section 541(c)(2). The debtors' pension fund was governed by a Minnesota statute which provided for numerous transfer restrictions, comparable to ERISA an anti-alienation clause. *See* Minn.Stat. 354.-10 (1982). The district court had characterized the issue on appeal as "whether the [teachers'] Fund is enforceable as a traditional spendthrift trust under Minnesota law," appearing to follow *Goff. Matter of Swanson*, 79 B.R. 422, 424 (D.Minn.1987). The court concluded that because the teachers had the ability to withdraw their own contributions to the Fund, the "trust" was in effect self-settled and, therefore, unenforceable as a spendthrift trust under Minnesota law. *Id.* at 426–27. The appellate court affirmed the district court's decision. After noting that section 541(c)(2) was designed to preserve the status of traditional spendthrift trusts, *Swanson*, 873 F.2d at 1123 (quoting *Graham*, 726 F.2d at 1271), the court observed that "[t]he question remains, however, whether the Fund qualifies as a spendthrift trust under Minnesota law." *Id.* The court then went on to find, like the district court, that the Fund lacked the necessary characteristics of a spendthrift trust. *Id.* 873 F.2d at 1124.

At first blush, *Swanson* seems to follow *Goff* perfectly, exploring the *possibility* that a pension plan can be excluded under section 541(c)(2), as long as it qualifies as a spendthrift trust.[9] But there is also language suggesting otherwise—that "to exclude retirement funds from the bankruptcy estate [would render the] limited federal exemption for those funds ... meaningless." *Id.* This rationale, which is also found in *Graham*, can be used to justify never allowing the exclusion of pension funds from the estate, even if such funds could be deemed enforceable spendthrift trusts under state law. This is an extreme view and there is reason to believe the *Swanson* court did not adopt it. Indeed, why extensively analyze whether the Fund qualifies as a spendthrift trust if, in any case, such pensions cannot be excluded without doing violence to the "coherent scheme" of the Code? Moreover, *Swanson* appears to be restricted to its facts, as the court concludes that "§ 541(c)(2) was not intended to exclude pension funds *such as those involved in this case* from the bankruptcy estate." *Id.* at 1125 (emphasis added). Thus, *Swanson* announces no absolute rule for the inclusion of pension benefits in bankruptcy estates and, unfortunately, there still exists a split of authority on how to apply *Graham*.

While *Graham* may be subject to different, and doubtless reasonable, interpretations, this court is convinced that it is best to read the decision in light of the great majority of federal courts following *Goff.* In other words, *Graham* held only that pension plans are not excluded under section 541(c)(2) by operation of ERISA itself. Thus, "applicable nonbankruptcy law" means state law, to the extent such law recognizes and protects spendthrift trusts. Spendthrift trusts are "commonly created for the purpose of providing [for the] maintenance of the beneficiary while at the same time securing the beneficiary against improvidence or incapacity." *Wiggins*, 60 B.R. at 92. The trust is protected by a provision restricting the right of transfer or alienation, whether voluntary or involuntary. It follows that if a pension plan has all the hallmarks of such a trust, any dis-

---

**9.** Indeed, the *Swanson* court appears careful to restrict the breadth of its holding: "[W]e do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under § 542(c)(2)." *Id.* at 1124.

tinction between them "would be artificial and would not be consistent with the equitable nature of the Bankruptcy Code." *Id.* at 92. The Eighth Circuit appears to have at least implicitly adopted this approach by its extensive spendthrift trust analysis in *Swanson.*

This result is widely accepted by other federal courts and does not seem to frustrate the purpose of either section 541 or section 522. While pension plans in general are expressly made subject to certain exemptions under section 522(d)(10)(E), it is perfectly consistent to find that some plans in particular may be excludable under the more "narrowly focused provision" of section 541(c)(2). *McLean,* 762 F.2d at 1208. This approach does not render section 522(d)(10)(E) meaningless; indeed, many, if not most, ERISA plans will fail to qualify as a valid spendthrift trust and certain states do not recognize such trusts. In either case, plan funds would then come into the estate, subject only to the exemption provisions. Hence, section 522(d)(10)(E) "does not preclude consideration of qualified pension plans under the section 541 exclusion provision so long as they qualify as a 'spendthrift trust' under the applicable state law." *Goff,* 706 F.2d at 587; *see also In re West,* 64 B.R. 738, 742 (Bankr.D.Ore.1986); *In re Dagnall,* 78 B.R. 531, 533–34 (Bankr.C.D.Ill.1987); *In re Wiggins,* 60 B.R. 89, 92 (Bankr.N.D.Ohio 1986).[10]

There are also compelling policy reasons for reading *Graham* and *Goff* consistently. The extent to which employer-created pension plans are protected from a pensioner's creditors or a bankruptcy trustee may directly impact upon the employer's initial decision to establish or continue such plans.

ERISA itself was intended to be a comprehensive remedial statute, enacted to protect beneficiaries of retirement plans by reducing the risk of loss for pension benefits. *See Duchow v. New York State Teamsters Conference,* 691 F.2d 74 (2d Cir.1982), *cert. denied,* 461 U.S. 918, 103 S.Ct. 1902, 77 L.Ed.2d 289 (1983). As the legislative history of ERISA stresses:

> One of the most important matters of public policy facing the nation today is how to assure that individuals who have spent their careers in useful and socially productive work will have adequate income to meet their needs when they retire. The legislation is concerned with improving the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income.

H.R. 807, 93rd Cong., 2d Sess. (1974), 1974 U.S.Code Cong. & Admin.News 935. These objectives are no less substantial than those of the Bankruptcy Code and section 541. ERISA was passed partly in the hope of encouraging employers to establish well run, safe and effective welfare plans. *See* 29 U.S.C. § 1001a(c)(1)–(4). To this end, many plans now offer protections beyond the statutorily required anti-alienation clause, which severely restrict a beneficiary's access to plan funds until retirement or disability.[11] If the plan functions tantamount to a traditional spendthrift trust—the only difference being the settlor and beneficiary are in an employment relationship instead of a familial one—then under section 541(c)(2) "the bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust." H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 176 (1977), 1978 U.S. Code Cong. & Admin.News p. 6136.[12] For

---

**10.** This conclusion may appear contrary to some of the reasoning in *Graham.* However, it is important to realize that the exemption discussion in *Graham* (at 1272–73) was conducted with an eye toward reconciling ERISA with the Code. Consequently, a wholesale section 541 exclusion for ERISA plans by virtue of 29 U.S.C. § 1056(d)(1)—which the *Graham* court rejected—would indeed have taken the teeth out of the broad exemption provisions of section 522(d)(10)(E).

**11.** Indeed, in the present case, there is no provision in Mrs. Boon's plan for early withdrawal of her pension funds *under any circumstances.* Since the administrator has complete legal control over the corpus of the fund, it is fair to wonder whether a bankruptcy court even has the authority to order such future benefits turned over to the trustee prematurely.

**12.** Appellants and Citizens also point out that the Internal Revenue Service has held in a private letter ruling that a pension plan would be disqualified under the IRC if a distribution is

all of these reasons, this court holds that ERISA plans may be excluded from the bankruptcy estate under section 541(c)(2) if, and only if, they qualify as an enforceable spendthrift trust under applicable state law.

## C. Do Debtors' Plans Qualify as Spendthrift Trusts?

■ Although the court finds that the bankruptcy court incorrectly applied *Graham,* the question remains whether the appellant's plans actually qualify as enforceable spendthrift trusts under Missouri law.[13] The bankruptcy court characterized the plans as "self-settled," *Boon,* 90 B.R. at 992, which, if accepted, would invalidate their status as spendthrift trusts. *See* G.T. Bogert, *Trusts,* § 40 at 155–56 (6th ed. 1987); *Jamison v. Mississippi Valley Trust Co.,* 207 S.W. 788, 789 (Mo.1918). This is essentially a conclusion of law, which this court is entitled to determine independently. *In re Craghead,* 57 B.R. 366, 367 (W.D.Mo.1985).

■ At their most basic level, appellants' benefits plans have all of the necessary elements of a valid trust under Missouri law—a trust res, identifiable beneficiaries and a trustee. *See Potter v. Winter,* 280 S.W.2d 27, 33 (Mo.1955). Both plans use traditional trust terminology and evince an intent to create an "express" trust.[14] *See Gwin v. Gwin,* 240 Mo.App. 782, 219 S.W.2d 282, 285 (1949). The plans obviously define and limit the uses and purposes to which the funds may be devoted, as well as defining the duties of the trustee, all of which suggests that the plans may be legally regarded as express trusts. *Boden v. Johnson,* 226 Mo.App. 787, 47 S.W.2d 155,

158 (1932). Finally, the plans each have express "spendthrift trust" provisions.[15]

The court notes that "[s]pendthrift trusts are clearly valid in Missouri, and such provisions may preclude creditors from seizing the interests of beneficiaries of these trusts." *Electric Workers, Local No. 1. Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154, 157 (Mo. banc 1979); *see also Bolton Roofing Company v. Hedrick,* 701 S.W.2d 183, 184–85 (Mo. App.1985). Spendthrift trusts are governed by Mo.Rev.Stat. § 456.080, which provides in the relevant part:

2. The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

3. A provision restraining the voluntary or involuntary transfer of beneficial interests in a trust will prevent the settlor's creditors from satisfying claims from the trust assets unless at the time the trust was established or amended:

(1) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke the trust; or

(2) The settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument; or

(3) The conveyance of assets to the trust was intended to hinder, delay or defraud creditors or purchasers pursuant to section 428.020, RSMo.

---

made from the plan pursuant to an order of a bankruptcy court. Private Letter Ruling 8131020. Citizens argues that this could ultimately lead to a discontinuance of employer-created plans. While such predictions may be a little dramatic, there is still much cause for concern.

13. The Citizens' pension and profit sharing plans have their situs in Missouri, thus making Missouri trust law controlling. *Krause v. Jeannette Investment Company,* 62 S.W.2d 890, 893 (Mo.1933).

14. *See* Debtors' Exhibit 1 ("Pension Plan") at 1 ("the Trust Estate shall be held by the Trustee according to the following terms, provisions and conditions...."); and *see* Debtors' Exhibit 2 ("Profit Sharing Plan") at 1 ("The Trust Fund shall consist of all payments heretofore made and all payments which from time to time shall be made ... [by Citizens] to the Trustee....").

15. Exhibit 1 § 15.1; Exhibit 3 § 14.1; *see, supra* at 698–699.

In the instant case, by characterizing the plans as "self-settled" trusts, the bankruptcy court effectively invoked the prohibition against the settlor also being the beneficiary of the trust, as found in section 456.080.3(1). The settlor of a trust is the person who creates the trust, while the beneficiary is the person for whose benefit the trust is held. *See, e.g., Estate of Lamy*, 679 S.W.2d 288, 290 (Mo.1984). Because the bankruptcy court does not explain exactly why it found the plans to be "self-settled," this court must conduct its own review of the record on this issue.

Appellants' profit sharing plan states that "the Citizens' Bank and Trust Company established a profit sharing plan, effective January 1, 1956, for the exclusive benefit of its employees and their beneficiaries...." Appellants' Exhibit 1, page 1. Likewise, the pension plan purports to be established by Citizens. Exhibit 3, page 1. The plans are to be maintained "for the exclusive benefit" of participating employees. Exhibit 1, § 15.2; Exhibit 3, § 14.2. As Citizens seems to have "created" the trusts and its employees are the sole beneficiaries, neither plan would appear to be self-settled in the traditional sense.

The bankruptcy court cited two facts that would presumably account for its conclusion that the plans were self-settled. First, when noting the amount of vested interest Donna Faye Boon had acquired in the plans, the court defined such interest as "the amount which would have otherwise been paid as salary if not reserved for later payment after retirement." *Boon*, 90 B.R. at 989 n. 3. This would clearly make her interest in the plans a form of deferred compensation, thus defeating their status as spendthrift trusts. *See, e.g., Swanson*, 873 F.2d at 1124. However, this characterization of the plans is contrary to the evidence, for there was unequivocal testimony

that contributions to the profit sharing plan are dependent on the existence of Citizens' profits. Tr. at 24–25. If there are no profits, no contributions will be made. *Id.* And while the pension plan bases its contribution formula on a percentage of the participant's monthly pay multiplied by a seniority factor, there is no salary deferral.[16] Exhibit 3, § 3.2. Moreover, in contrast to an employee's right to his salary, interests in the plans are not absolute and will not vest until certain conditions are met. *See* Exhibit 1, §§ 1.27, 7.1; Exhibit 3, §§ 1.28, 7.1; Tr. at 18–19. Thus, an employee quitting after four years would be entitled to no pension benefits and only a small percentage of his interest in the profit sharing plan. *Id.* Given the manifest terms of each plan, the bankruptcy court's finding that Mrs. Boon's interests were a form of deferred salary is clearly erroneous.

The bankruptcy court also described Mrs. Boon's participation in the plans as "voluntary." *Boon*, 90 B.R. at 990. In support of this conclusion, the court cited Article II, § 2.2 of the profit sharing plan, which states: "[P]articipation in the Plan shall be entirely voluntary on the part of each eligible employee." However, Ross Lillard, an attorney who helped draft both plans, testified that an employee has no real option but to participate in the profit sharing program. Tr. at 18. As for the pension plan, the bankruptcy court noted that "it is the voluntary act of the participant to become employed under such circumstances as require payment into the ERISA plan" that makes the plan voluntary. *Boon*, 90 B.R. at 990.[17]

The court first questions the significance of the fact that an employee's participation in a plan is somehow "voluntary." A putative beneficiary may certainly reject his right to a trust and to that extent participation in any trust arrangement is

---

16. While some ERISA plans consist of salary deferral contributions, such plans must comply with numerous requirements pursuant to section 401(k) of the Internal Revenue Code. Appellants and Citizens both deny the instant plans are salary deferral plans under this provision and there is no evidence on the record to the contrary.

17. Unlike the profit sharing plan, the pension plan has no express provision regarding voluntary participation. Article III, § 2.1 provides that each employee "shall become a Participant on the effective date." Exhibit 3, page 9.

**708**

voluntary.[18] Thus, to say that Mrs. Boon voluntarily participated in either plan begs the question. Such participation alone does not make her settlor of the plan. As one court has reasoned "[i]t is clear that in ERISA-qualified plans which are set up by employers to assist in aiding ... workers to secure a means of support when [they are] no longer able to work, it is the employer who is the settlor of the trust, not the employee." *Matter of Jones*, 43 B.R. 1002, 1006 (N.D.Ind.1984). The simple fact that an employee voluntarily accepts a job which provides for plan participation does not make that employee the settlor of the plan. *See In re Taylor*, 84 B.R. 159, 160 (Bankr.E.D.Mo.1988); *SSA Baltimore Federal Credit Union v. Bizon*, 42 B.R. 338 (D.Md.1984).

While voluntary "participation" in either plan is not critical, an employee's voluntary contributions to a plan's funds "defeat its spendthrift characteristics...." *In re Wallace*, 66 B.R. 834, 842 (Bankr.E.D.Mo. 1986). However, as the bankruptcy court found below, "all contributions to the plans are made by the *employer*." *Boon*, 90 B.R. at 989 (emphasis added). Thus, Citizens' employees such as Mrs. Boon cannot be regarded as settlors of either trust under this theory.

So far, it would seem clear that both of appellants' plans have all of the necessary characteristics of a spendthrift trust under Missouri law. Yet, one further factor must be considered. The bankruptcy court described appellants' vested interest in the plans as the "amounts shown to be withdrawable." *Boon*, 90 B.R. at 989 n. 3, implying that Mrs. Boon has some immediate access to her benefits. Such access could constitute "absolute dominion or control" over the property of the trust, thus

vitiating its spendthrift status. *See Lichstrahl*, 750 F.2d at 1490; *In re Goshe*, 85 B.R. 157, 159 (Bankr.M.D.Fla.1988).[19] However, for a number of reasons, the court finds that appellants cannot exercise true dominion or control over the funds of either plan. First, the pension plan contains no provision allowing an employee to receive funds prior to the termination of employment. Tr. at 26. A number of courts have held that "an employee's ability to terminate an employment trust, of which he is a beneficiary, by quitting his job, does *not* disqualify the trust as a spendthrift trust under 541(c)(2)." *In re Wallace*, 66 B.R. 834, 841 (Bankr.E.D.Mo. 1986); *In re Forbes*, 65 B.R. 58, 59 (Bankr. S.D.Fla.1986) ("employment termination is a significant restraint upon withdrawal of [an employee's] benefits"); *see also In re West*, 64 B.R. 738, 743 (Bankr.D.Ore.1986) (to the same effect); *Matter of Jones*, 43 B.R. 1002, 1007 (N.D.Ind.1984) (same).

In contrast to the pension plan, the profit sharing plan has certain provisions allowing the employee-beneficiary to borrow or withdraw funds. Under the plan, funds can only be borrowed or withdrawn to meet an emergency situation such as "the illness or disability of the Participant or a member of his family, the education of a dependent or the establishment or preservation of the Participant's residence." Exhibit 1, § 10.1–10.2. There is nothing in the plan giving the employee a right to such funds; rather, the determination to loan money or permit withdrawal seems to lie within the absolute discretion of the plan's administrative committee. Tr. 34–36. Further, in either case, the total accessible amount is limited to at most fifty percent of an employee's vested interest, reduced by any contributions made during the preceding two years. *Id.*[20]

---

**18.** Under Missouri law, under certain circumstances, the beneficiary of a spendthrift trust may, prior to accepting the trust, effectively disclaim it so as to result in an acceleration of his interest under the trust. *See Commerce Trust Company v. Fast*, 396 S.W.2d 683, 687 (Mo.1965). The fact that this option exists does not serve to invalidate the trust itself.

**19.** While no Missouri cases have expressly adopted the "dominion and control" test, it is

widely accepted and in fact, it is simply another way of expressing the idea that the trust is illusory if the beneficiary may at any time circumvent its restrictions and gain unsupervised access to the trust property.

**20.** Thus, the bankruptcy court clearly erred when it determined that Mrs. Boon could withdraw $35,000 from the plan. *Boon*, at 989 n. 3. Under the above formula, the amount with-

In general, the existence of a provision allowing a beneficiary to receive loans from a trust does not invalidate that trust's spendthrift clause. *Danning v. Lederer,* 232 F.2d 610, 614 (7th Cir.1956). Since such loans are made at the discretion of the administrative committee, "one can only speculate as to whether the Plan Trustees would have granted the debtor a loan if [s]he had requested one." *West,* 64 B.R. at 738. In this light, provisions allowing the lending or withdrawal of funds from the profit sharing plan, as needed for maintenance, support or education, make it indistinguishable from a support trust. *See* Bogert, *Law of Trusts,* § 229 (2d ed. 1979). An interest in a support trust is ordinarily not transferable by the beneficiary and is protected from the claims of his creditors. *See Restatement of the Law of Trusts (Second),* § 154 (1959). Likewise, a debtor's right to request a loan or withdrawal from a plan must be distinguished from his right to *receive* the funds, for where the trustee retains unhindered discretion to deny the request, the debtor does not have true dominion or control over the trust res. *Wallace,* 66 B.R. at 841; *see also In re Monahan,* 68 B.R. 997, 1000 (Bankr.S.D. Fla.1987); *In re Dagnall,* 78 B.R. 531, 535 (Bankr.C.D.Ill.1987).[21] Realistically, under the terms of the plan, Mrs. Boon has no legal way to compel the administrative committee to allow her to borrow or withdraw any amounts from the fund.[22] Under the circumstances, the court is satisfied that she can exercise no dominion or control over her interests in the Citizens' profit sharing plan.

Both ERISA plans in the instant case were created by Citizens to provide its employees with a reliable, stable and protected source of retirement income. Citizens itself made all plan contributions and carefully drafted each plan, strictly limiting access to the funds. Thus, both plans are in stark contrast to the debtor's profit sharing plan at issue in *Graham,* for in that case, Dr. Graham was the trustee and only participant in his own plan. Moreover, he was the sole stockholder, director and officer of the professional corporation that contributed its profits to the plan. He (as the sole member of the corporation's "Board of Directors") had absolute discretion to choose what contributions would be made to the plan each taxable year. Graham's plan also provided that benefits would be distributed early only at the sole discretion of the "Advisory Committee." Dr. Graham was, of course, the only member of the Advisory Committee. All of these factors fully distinguish the *Graham* case and militate strongly against a finding that Mrs. Boon's plans are "self-settled." [23]

### III. Conclusion

Bankruptcy Rule 8013 provides that a district court reviewing the decision of a bankruptcy court shall not set aside findings of fact unless they are clearly erroneous. The district court must give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses and to its weighing of the evidence, although this court may make a *de novo* review of all conclusions of law. *In re Pierce,* 809 F.2d 1356, 1359 (8th Cir.1987). Having done so, the court concludes that the bankruptcy court incorrectly applied the *Graham* decision. Moreover, the bankruptcy court clearly erred in characterizing the Citizens' plans as self-settled, for Mrs. Boon made no voluntary contributions to the plans and had no dominion or control

---

drawable from the profit sharing plan instead computes to $16,348.59. Tr. at 37, 59.

**21.** *Compare In re Rodriguez,* 82 B.R. 74, 76 (Bankr.E.D.Ark.1987) (debtor had absolute right under plan to access funds, defeating spendthrift trust); *In re Goshe,* 85 B.R. 157, 159 (Bankr.M.D.Fla.1988) (same).

**22.** It is also by no means certain that the bankruptcy court would have the power to compel the trustee to exercise his discretion and allow a withdrawal in a situation such as this.

**23.** See also *Goff,* 706 F.2d at 589, where the court observed that "[i]n analyzing the effectiveness in bankruptcy of spendthrift provisions in pension plans, the courts have generally concluded that those contained in employer-created plans were effective [while] similar provisions in self-settled plans were not." And *see Matter of Brooks,* 844 F.2d 258, 262 (5th Cir.1988) (professionals cannot shield part of their earnings by establishing pension plans through their solo practices, partnerships or associations).

over the proceeds of either trust. Accordingly, it is

ORDERED that the judgment of the bankruptcy court is reversed and appellants' interest in the Citizens' pension and profit sharing plans is not to be included in the bankruptcy estate.